KASKEL & KASKEL *et al. v.* UNITED STATES (No. 935).[1]

MUFFLERS OF SILK UNDER PARAGRAPH 400, TARIFF ACT OF 1909.
    The merchandise is admittedly composed of silk, finished, cut, and not hemmed. Paragraph 400, tariff act of 1909, is not restricted in its operation to mufflers that are handkerchiefs or that are similar to handkerchiefs, and the term "mufflers" there employed embraces both knit and woven mufflers, "finished or unfinished, if cut, not hemmed or hemmed only." The goods were dutiable under that paragraph.

United States Court of Customs Appeals, February 28, 1913.

APPEAL from Board of United States General Appraisers, Abstracts 28475 and 28493 (T. D. 32507).
    [Reversed.]

*McLaughlin, Russell, Coe & Sprague* (*Edward P. Sharretts* of counsel) for appellants.
*William L. Wemple,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:
The question involved in this case is the dutiable status of knitted silk mufflers, which were classified by the collector of customs at the port of New York as wearing apparel and assessed for duty at 60 per

---

[1] Reported in T. D. 33264 (24 Treas. Dec., 406).

cent ad valorem under that part of paragraph 402 of the tariff act of 1909, which reads as follows:

402. Laces, * * * clothing, ready made, and articles of wearing apparel of every description, including knit goods, made up or manufactured in whole or in part by the tailor, seamstress, or manufacturer; all of the foregoing composed of silk, * * * or of which silk is the component material of chief value, * * * sixty per centum ad valorem: *Provided,* That articles composed wholly or in chief value of any of the materials or goods dutiable under this paragraph shall pay not less than the rate of duty imposed upon such materials or goods by this section: * * *.

The importers protested that the goods were mufflers within the intent and meaning of paragraph 400 and that they were therefore dutiable at 50 per cent ad valorem under the first clause of that paragraph, which is as follows:

400. Handkerchiefs or mufflers composed wholly or in chief value of silk, finished or unfinished, if cut, not hemmed or hemmed only, shall pay fifty per centum ad valorem; * * *.

The Board of General Appraisers overruled the protest, and the importers appealed.

From the evidence in the case it appears without contradiction that the goods are finished silk fabrics, cut, not hemmed, and designed to be worn by men about the neck for the purpose of protecting the throat from cold and the linen of the wearer from soiling. The articles are made on a knitting machine and are knitted in lengths of from 10 to 60 yards. These lengths are cut to the proper size and are then passed through what is known as an overwhelming machine, which stitches the borders, and thus protects the fabric from unraveling. In size, shape, and use the completed manufacture conforms to the modern and popular understanding of a muffler. Indeed, according to the testimony, it is so known to the trade.

The extreme narrowness of the article as compared with its length and the fact that it can not be worn about the shoulders exclude it from the class of wraps known as shawls. Like the shawl, the importation is a species of scarf, and scarfs have been held to be wearing apparel. Nevertheless, the goods under discussion are not dutiable as wearing apparel if they have been specifically provided for as mufflers. Whether the mufflers under discussion are the mufflers provided for in paragraph 400 of the tariff act in force is therefore the real question to be determined on the present appeal.

Counsel for the Government contend that the paragraph mentioned was intended by the Congress to cover woven, not knitted, articles, and that it is limited to such mufflers as are of the character and kind of handkerchiefs. We have examined paragraph 400 with some care, and also the corresponding paragraph of the tariff act of 1897, and we can find nothing in either provision which

at all justifies the conclusion that there was a congressional intention to limit the operation of paragraph 400 to woven articles or to mufflers of the character of handkerchiefs. Paragraph 388 of the tariff act of 1897 is the original of the present provision for mufflers, and, with the exception of the italics, is as follows:

388. Handkerchiefs or mufflers composed wholly or in part of silk, whether in the piece or otherwise, finished or unfinished, if not hemmed or hemmed only, shall pay the same rate of duty as is imposed on goods *in the piece of the same description, weight, and condition as provided for in this schedule;* but such handkerchiefs or mufflers shall not pay a less rate of duty than fifty per centum ad valorem;    *    *    *.

This paragraph provided that the rate of duty imposed on mufflers should be the same as that imposed on goods in the piece of the same description, weight, and condition as provided for in Schedule L. Inasmuch as the only fabrics in the piece described in Schedule L were woven fabrics, it would seem that the purpose of paragraph 388 was to lay a duty on such mufflers as were woven, and on none others. In paragraph 400 of the tariff act of 1909, however, the provision which imposed on mufflers the same duty as that borne by woven goods of the same kind was carefully omitted by Congress, and if we are warranted in drawing any conclusion at all from that omission it must be that there was no legislative intention to confine the paragraph now in force to woven mufflers.

But let that be as it may, there is nothing in the provision itself or in its relation to other laws in effect which makes necessary the ascertainment of its meaning by any other means than that of the language which Congress saw fit to employ. The first clause of paragraph 400 provides plainly and unequivocally that "mufflers composed wholly or in chief value of silk, finished or unfinished, if cut, not hemmed or hemmed only, shall pay fifty per centum ad valorem." This definition of the merchandise subjected to duty is not on its face susceptible of a double interpretation, and so far as the record discloses there is in it no latent ambiguity. The only inquiry, therefore, which the court can make is, Are the mufflers here imported within the description and designation of the statute? United States *v.* Citroen (223 U. S., 407, 415). As they are admittedly composed of silk, finished, cut, and not hemmed, it would seem that if full effect is to be given to the intention of Congress as manifested by the language that it used, we must hold that the importation is dutiable at 50 per cent ad valorem under paragraph 400. In order to sustain the contention of the Government that the enactment is restricted to woven mufflers or to mufflers which are handkerchiefs or are similar to handkerchiefs, the court would be obliged to add to the statute language which the legislature did not see fit to add and to insert in the law a limitation which the Congress did not deem proper to make.

That course we are not prepared to take, especially as neither the record nor the statute itself offers any reasonable ground for believing that Congress did not mean exactly what it said.

Mufflers and handkerchiefs were coupled together for the first time in paragraphs 312 and 388 of the tariff act of 1897, and that coupling was brought about, it is true, because theretofore a certain kind of muffler, differing from a handkerchief only in size, had been assessed at another and lower rate of duty. *In re* Guiterman Bros. (T. D. 17959); Erhardt *v.* Ballen (55 Fed., 968). When handkerchiefs and mufflers were first provided for in the same paragraph, it is worthy of note that the enumeration of mufflers was not confined to those which were like handkerchiefs, but was broad enough to cover any woven muffler, whether square like a handkerchief or long and narrow like the goods imported. Consequently, when the provision which restricted paragraphs 312 and 388 to woven mufflers was dropped from paragraph 400 of the present tariff act, the term "mufflers" as used therein was no longer limited to those which were woven, but became sufficiently comprehensive to embrace both knit and woven mufflers, "finished or unfinished, if cut, not hemmed or hemmed only."

The fact that the goods under consideration are sometimes called scarfs does not take them out of the classification of mufflers. "Scarfs" is a general term which covers small, thin shawls, mufflers, and even certain kinds of neckties. At most, then, a muffler is a species of scarf, and that fact is not in any way incompatible with the idea that it might be made dutiable and specifically provided for as a muffler.

Counsel for the Government urges that knitted mufflers are not susceptible of the manipulations specified in the second clause of paragraph 400 and that therefore the whole paragraph must be considered inapplicable to knitted mufflers. We do not think that the premises laid justify that conclusion. Because Congress provided a duty of 50 per cent ad valorem in the first clause of the paragraph for mufflers composed wholly or in chief value of silk, finished or unfinished, if cut, not hemmed or hemmed only, and in the second clause a duty of 60 per cent ad valorem for mufflers composed wholly or in chief value of silk, if hemstitched, or imitation hemstitched, etc., it does not necessarily follow, in our opinion, that the articles first mentioned must be capable of development into articles such as those last described. Were it otherwise, a provision imposing a duty of 50 per cent ad valorem on shoes and a duty of 60 per cent ad valorem on shoes embroidered would be susceptible of no other interpretation than that the lower rate of duty was applicable only to such shoes as were capable of being embroidered. Moreover, there is uncontra-

dicted evidence in the record which tends to show that knitted mufflers such as those imported are susceptible of some of the operations specified in the second clause of paragraph 400.

The decision of the Board of General Appraisers is *reversed*.