HENSEL, BRUCKMANN & LORBACHER *et al. v.* UNITED STATES (No. 932).[1]

KNITTED SILK MUFFLERS AND PARAGRAPH 400, TARIFF ACT OF 1909.

The issue upon which the case was tried and decided below has been determined here in a previous case—Kaskel *v.* United States (4 Ct. Cust. Appls., 38; T. D. 33264)—and the views there expressed are adhered to. A fuller record might work a reversal of those views, but the present record, taken as a whole in connection with the exhibits, sufficiently establishes the importers' contention that these mufflers were dutiable under paragraph 400, tariff act of 1909.

United States Court of Customs Appeals, November 18, 1913.

APPEAL from Board of United States General Appraisers, Abstract 28475 (T. D. 32507).

[Reversed.]

*Churchill & Marlow* for appellants.

*William L. Wemple,* Assistant Attorney General (*Frank L. Lawrence,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

This case involves two appeals and presents the following facts for consideration: Certain merchandise was imported and assessed for duty under paragraph 402 of the tariff act of 1909. It was claimed to be dutiable under paragraph 400 of the same act. The paragraphs follow:

400. Handkerchiefs or mufflers composed wholly or in chief value of silk, finished or unfinished, if cut, not hemmed or hemmed only, shall pay fifty per centum ad valorem; if such handkerchiefs or mufflers are hemstitched or imitation hemstitched, or revered, or have drawn threads, or are embroidered in any manner, whether with an initial letter, monogram, or otherwise, by hand or machinery, or are tamboured, appliquéed, or having tucking or insertion, sixty per centum ad valorem.

402. Laces, edgings, insertings, galloons, flouncings, neck rufflings, ruchings, braids, fringes, trimmings, ornaments, nets or nettings, veils or veilings, and articles made wholly or in part of any of the foregoing, or of chiffons, embroideries and articles embroidered by hand or machinery, or tamboured or appliquéed, clothing ready made, and articles of wearing apparel of every description, including knit goods, made up or manufactured in whole or in part by

---

the tailor, seamstress, or manufacturer; all of the foregoing composed of silk, or of silk and metal, or of which silk is the component material of chief value, whether in part of India rubber or otherwise and braid composed in part of India rubber, not specially provided for in this section, and silk goods ornamented with beads or spangles, sixty per centum ad valorem: *Provided*, That articles composed wholly or in chief value of any of the materials or goods dutiable under this paragraph shall pay not less than the rate of duty imposed upon such materials or goods by this section: *Provided further*, That tamboured; embroidered or appliquéed articles or fabrics shall pay no less rate of duty than that imposed upon the material if not so tamboured, embroidered, or appliquéed.

The protests were heard by the board in conjunction with the protests of Kaskel & Kaskel, which involved like merchandise. In the Kaskel case the board overruled the protests and the importers appealed to this court, where the judgment of the board was reversed. See Kaskel & Kaskel *v*. United States (4 Ct. Cust. Appls., 38; T. D. 33264).

The board likewise overruled the protests in the case at bar, from which the importers appealed to this court, but it appears that by agreement of parties the presentation of the appeals now here was deferred until the decision of this court was obtained in the Kaskel case. That having been accomplished, the case is now before us.

The exhibits, the evidence, and the opinion of the board in these cases are identical with the exhibits, evidence, and board's opinion in the Kaskel case.

In the Kaskel case the contention of the importers was in substance that the merchandise was *eo nomine* within the provision for mufflers composed wholly or in chief value of silk, in the first part of paragraph 400. In other words, that that paragraph related to all kinds of mufflers made of silk. The board, however, was of opinion, and the case was disposed of on that theory, that the mufflers therein referred to were of the character of handkerchiefs only—that is, *woven* fabrics—and that *knitted* mufflers were not included within the paragraph. In this court the Government based its argument for sustaining the judgment of the board in the main upon that proposition. We held that this contention was not well founded, and that the term "mufflers" in paragraph 400 applied as well to knitted as to woven articles, assuming that in other respects they were brought within the common understanding of the meaning of the word mufflers and within the specific provisions of the paragraph. In its brief in that case the Government said that—

The condition, "if cut, not hemmed or hemmed only," must be taken as referring to an article that is susceptible of being hemmed. Now, the evidence in this case is conclusive that these articles are not susceptible of being hemmed, for the importers' witness Hanhart testified that they were knitted with a border and that the knitting of the border and the knitting of the body are done at the same time. An examination of the exhibits in evidence shows that this border is so made that it never would or could be hemmed, and, indeed, no testimony was offered that it ever would or could be hemmed.

The importers claimed they were not hemmed.

A petition for rehearing was filed in this court by the Government, wherein it was stated, among other things, with reference to the mufflers in suit, " to hem articles so constructed is, if anything, more of a commercial impracticability than is the decoration of a bisque ring "; and again, that " since those in suit are not hemmed, they can be classified at 50 per cent ad valorem under paragraph 400 only if they are in a less advanced form than cut and hemmed, to wit, cut only, not hemmed." Upon consideration the petition was denied.

In the opinion of the court in the Kaskel case by Smith, Judge, it was said, referring to the mufflers:

> As they are admittedly composed of silk, finished, cut, and not hemmed, it would seem that if full effect is to be given to the intention of Congress as manifested by the language it used, we must hold that the importation is dutiable at 50 per cent ad valorem under paragraph 400.

Now, in the case at bar, referring, it will be borne in mind, to the same merchandise, although to only two of the four samples, it is said by the Government in its brief that " in fact inspection of some of the exhibits shows unmistakably that they were hemmed."

The Government also says, referring to the Kaskel case, that it " did not admit the goods were ' not hemmed ' within any fair sense of that term."

Special attention is called to the foregoing to show just what the court understood the facts to be from the record and statements of counsel in the Kaskel case, and what it had a right to understand was the issue there.

There was no decisive testimony in the Kaskel case, and there is none here, as to whether the merchandise was hemmed or not. All that was said upon that subject is embraced in the following quotation from the record, which, as stated, is the same in each case. A witness, having testified that one of the exhibits was a plain knitted muffler, originally knitted in lengths from 10 to 60 yards, was asked:

> And then what is done?

His reply was:

> Then they are cut to their proper size and passed through—they are passed through another overwhelming machine to stitch the borders to protect the mufflers against unraveling.
>
> Q. This overwhelming machine you speak of is intended to take up the loose threads after the fabric has been cut?—A. Yes.

There was no further testimony as to what the overwhelming process in fact was or the results thereby produced, although the Government in its brief claimed that, after being cut, another machine—we conclude it must thereby refer to the overwhelming machine—had trimmed the mufflers with a silk fringe. Neither was there any further evidence as to whether or not the mufflers were hemmed, nor

did the board make any finding on that question or find how the so-called fringed effect was produced. The fact that the witness said they were passed through another overwhelming machine indicates that the mufflers were subjected more than once to the operation of such a machine, but when, or what results were produced thereby, the evidence does not further disclose.

An examination of the two samples upon which the Government relies to sustain its contention here, namely, Exhibit 1 and Exhibit 1–A, shows as to 1, that the edges at the ends of the knitted fabric of the mufflers, after being cut, have been turned back and loosely stitched down across the ends; that as to 1–A, owing probably to the different finish of the ends that precise operation has not been performed, but the end threads have been fastened or sewed in some other manner, probably by the overwhelming process, sufficiently to prevent, in some degree at least, the unraveling of the fabric.

We think it is warrantable to infer, however, that this treatment of the ends of the fabric of both mufflers was produced by the overwhelming machine referred to by the witness, and it is very likely, although we do not know, that the tieing in of the silk threads at frequent intervals on the ends thereof, which produces a fringe-like effect about 1½ inches in length, was also a part of the overwhelming process, although the record does not clearly disclose that fact.

The Government now says that while it does not seek a reargument in this of what was decided in the Kaskel case, it nevertheless does desire to present certain phases thereof which it claims were not there considered. It states that the points it now desires to argue are:

1. The provision for mufflers "cut, * * * hemmed *only* " does not include mufflers that are fringed in addition to being cut and hemmed.

2. The provision for mufflers " cut, not hemmed," does not include mufflers that are overwhelmed and fringed in addition to being cut.

3. The provision for mufflers in paragraph 400 is governed by that in paragraph 402 for " articles made * * * in part of any of the foregoing " fringes of silk.

4. And is governed also by the provision in said paragraph 402 for " articles of wearing apparel of every description, including knit goods * * * composed of silk."

5. The articles are subject to the first proviso in said paragraph 402, prescribing:

" That articles composed * * * in chief value of any of the materials or goods dutiable under this paragraph shall pay not less than the rate of duty imposed upon such material or goods by this section."

The importers practically take the position that because the merchandise is identical with that in the Kaskel case and the record the same the conclusion of the court in that case is decisive of this, and further that because mufflers are *eo nominè* provided for in paragraph 400 they can not be held dutiable under any other paragraph of the act.

. What has been mentioned clearly shows that the case here presents this state of affairs: The issue before the board was whether *knitted* mufflers were within the scope of paragraph 400. As a reason for holding in the negative the Government contended that the mufflers were not hemmed, were not commercially susceptible of being hemmed, and also were not susceptible of the treatment referred to in the last part of paragraph 400.

Upon the issue so made importers have once prevailed in this court. . Now the Government makes the claim that the same record establishes a fact which it denied in the Kaskel case, namely, that the mufflers are hemmed. This question of fact was only incidentally and inconclusively referred to in the trial below of the present case and we have not the benefit of the board's finding thereon. It further asks us to find as a fact that overwhelming is not a hemming process, or is more than that, and that tying the silk threads into the ends of the mufflers in the manner shown by the exhibits, concerning which there is no testimony as to how or when it was done other than what we have referred to, is not a hemming process, but is something more than that.

. We do not know, other than as herein stated, what the overwhelming process is, or whether such process is or is not a hemming process so far as these mufflers are concerned. It is perhaps fair to conclude from the two samples that the silk threads tied in at the ends of the mufflers are a part of a proper hemming process thereof, as, to us, they seem likely to more effectually prevent the ends of the mufflers from unraveling than does the turning back and loosely sewing down the ends in one sample, or the treatment, whatever it may have been, that has been given to the ends of the other. The unraveling of either could hardly proceed further than these tied-in threads. If the overwhelming, whatever it is, is not hemming, then these are of course not hemmed, and a question might be made whether the tied-in silk threads were more than the mere finishing which the words "finished or unfinished" in the paragraph imply.

. We think all this can and ought to be more fully explained by testimony, which, perhaps, would be expert or technical in its nature, and that it is fair neither to the court nor the importers to ask us to make a finding on so material a question upon the exhibits alone.

. This paragraph relates to mufflers composed wholly or in chief value of silk, whether finished or unfinished, and one would naturally expect to find therein such provisions as would enable all such mufflers to be classified thereunder. It would seem that the provision " not hemmed or hemmed only," in connection with what precedes and what follows, was intended to mean that all mufflers wholly or in chief value of silk that were not treated as provided in the last part of the paragraph, which treatment, as we understand the common meaning of

the language there employed, is essentially a process of ornamentation applied to the fabric itself, would be dutiable under the first part at 50 per cent ad valorem. All varieties of the silk-muffler industry would, at first blush, seem to be provided for in the paragraph. It may be, however, that this is not so, and if it clearly appears that the mufflers here are of the character the Government now claims the appropriate rate of duty therefor must be found elsewhere. This question we do not decide.

. The issue upon which the case was tried and decided below has here, as in the Kaskel case, *supra*, been determined against the Government and the judgment below reversed. We adhere to our views as expressed in that case.

: The case now here should therefore be likewise disposed of unless the new questions raised require otherwise. The burden is upon the importers to establish that these mufflers are within the first part of paragraph 400, and we think the record as a whole, in connection with the exhibits, sufficiently establishes that fact for the purposes of this case.

A more complete record upon the various questions to which we have above referred may lead to a different conclusion, but as the cases now stand the judgment of the Board of General Appraisers is *reversed*.