UNITED STATES *v.* LINES & WARNE (No. 1453). UNITED STATES *v.* HENSEL, BRUCKMANN & LORBACHER (No. 1454).[1]

SILK MUFFLERS WITH A FRINGE EFFECT.

With these mufflers the threads are in all cases introduced to perfect and hold in place the overwhelmed and overlapped edges and are necessary as well for ornamentation. Being necessary to complete the hemming process or its equivalent, this can not be said to be a process beyond hemming; and the threads holding the individual pieces together being cut, the merchandise was brought within the provisions of paragraph 400, tariff act of 1909.

United States Court of Customs Appeals, March 3, 1915.

APPEAL from Board of United States General Appraisers, Abstract 36162 (T. D. 34668).

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.
*McLaughlin, Russell, Coe & Sprague* (*Edward P. Sharretts,* of counsel) for appellees

Before MONTGOMERY, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This appeal brings here for review two decisions of the Board of General Appraisers. It is the third time that the same merchandise

---

[1] Reported in T. D. 35193 (28 Treas. Dec., 344).

has been before this court for a decision as to its proper classification, each case, however, involving different points. The provisions under consideration are paragraphs 400 and 402 of the tariff act of 1909, which, so far as pertinent, read:

400. Handkerchiefs or mufflers composed wholly or in chief value of silk, finished or unfinished, if cut, not hemmed, or hemmed only, shall pay fifty per centum ad valorem; if such handkerchiefs or mufflers are hemstitched or imitation hemstitched, or revered, or have drawn threads, or are embroidered in any manner, whether with an initial letter, monogram, or otherwise, by hand or machinery, or are tamboured, appliquéd, or having tucking or insertion, sixty per centum ad valorem.

402. Laces, * * * fringes, * * * clothing ready-made, and articles of wearing apparel of every description, including knit goods, made up or manufactured in whole or in part by the tailor, seamstress, or manufacturer; all of the foregoing composed of silk, * * * or of which silk is the component material of chief value, * * * sixty per centum ad valorem: *Provided,* That articles composed wholly or in chief value of any of the materials or goods dutiable under this praagraph shall pay not less than the rate of duty imposed upon such materials or goods by this section: * * *.

In Kaskel & Kaskel *et al. v.* United States (4 Ct. Cust. Appls., 38; T. D. 33264), the sole question presented to and decided by the court was whether or not paragraph 400 included for dutiable purposes knit as well as woven mufflers. The court, reversing the board, held that both were included. The second appeal was from a decision rendered at the same time by the board, but withheld from review by this court until appellate decision as to the first was reached. Thereupon the second appeal, Hensel, Bruckmann & Lorbacher *et al. v.* United States (4 Ct. Cust. Appls., 486; T. D. 33914), was presented to the court for decision. The cases were presented upon the same record. The goods were aptly described by the court in Kaskel & Kaskel *et al. v.* United States, *supra,* as—

Finished silk fabrics, cut, not hemmed, and designed to be worn by men about the neck for the purpose of protecting the throat from cold and the linen of the wearer from soiling. The articles are made on a knitting machine and are knitted in lengths of from 10 to 60 yards. These lengths are cut to the proper size and are then passed through what is known as an overwhelming machine, which stitches the borders, and thus protects the fabric from unraveling. In size, shape, and use the completed manufacture conforms to the modern and popular understanding of a muffler. Indeed, according to the testimony, it is so known to the trade.

While women's mufflers are also involved here, there is no difference in their methods of construction and no differentiation is claimed.

The Government in the second appeal aforesaid contended that the processes applied by the overwhelming machine, together with the so-called fringe effect given the imported articles, constituted such advancement in the manufactured condition of the importations as to take them beyond the limiting description in paragraph 400 of "mufflers * * * finished or unfinished, if cut, not hemmed or hemmed only." The court found itself embarrassed by the meagerness of the record, but being satisfied that the importers had brought

themselves within the provisions of paragraph 400 upon the record as a whole when read in connection with the exhibits reversed the decision of the board upon the authority of the previous decision in Kaskel & Kaskel *et al. v.* United States, *supra.* The court, however, observed:

If the overwhelming, whatever it is, is not hemming, then these are of course not hemmed, and a question might be made whether the tied-in silk threads were more than the mere finishing which the words "finished or unfinished" in the paragraph imply. We think all this can and ought to be more fully explained by testimony, which, perhaps, would be expert or technical in its nature, and that it is fair neither to the court nor the importers to ask us to make a finding on so material a question upon the exhibits alone.

Therefore, acting upon this observance of the court, a new record was made up which is presented to the court by these appeals. The Board of General Appraisers sustained in these cases the contention of the importers upon the authority of the previous decisions of the court and the additional testimony adduced, which the board held to have confirmed in its opinion the correctness of the previous views of the court. The Government appeals.

The first contention made by the Government here, as it was before the board, is that this merchandise is not "cut," or at least that one class of it is not cut, by reason of the fact that in the knitting of the goods the warp is broken by mechanical process and the respective pieces held together by a single thread applied in the knitting process, whereby the respective pieces intended for individual mufflers are continued in the knit piece of from 10 to 60 yards in length. They come through the knitting frames in this condition as piece goods, and the testimony of all the witnesses is that in order to complete segregation and preparation for the subsequent overwhelming and hemming processes not only must the individual thread be twice cut in all cases, but what also seems shown there must in addition be a cutting of the loop threads in the individual pieces. The statute prescribes no number of threads which must be cut in order to bring the merchandise within its terms. Whatever the number of threads that hold the respective individual pieces together, they effect the same service, and before they become individuals cutting is necessary. We agree with the board in its conclusion that this cutting, which constitutes a severing process of the individual mufflers, is sufficient within the statute whether it be of one or more threads, the effect and result being the same.

While in the earlier cases it was contended that the overwhelming process was not equivalent to hemming as used in the statute, this position is abandoned by the Government in these appeals. It is expressly stated by the Government in its brief (p. 9):

Of course a finishing such as that of "overwhelming," or any similar binding of the edge to prevent unraveling, does not remove the muffler from the provision in question, for that makes a less advanced form of muffler than the hemmed article.

So that question is removed from these appeals. It appears from the record, however, that as to one of the samples the overwhelming process was not employed, but another to effect the equivalent ׀ urpose. It seems that as to that sample and class of merchandise the end was laid over. and under so as to conceal the cut edge and basted down with long stitches much in the manner of a hem. Then in all cases the so-called fringe effect is produced by assembling a number of silk threads within a needle, whereupon this collection of threads is by hand run through the looped ends of the fabric, made by the described overlapping or the overwhelming process, and then tied in a slipknot and drawn taut. Thereupon in each case they are clipped off, leaving a fringe effect of about 1½ inches in length.

It is claimed by the Government that this is an additional process not connected with the hemming or the finishing of the article, and hence carries the muffler beyond the condition described in paragraph 400 as not hemmed or hemmed only.

This court, as it contemplated the case in Hensel, Bruckmann & Lorbacher *v.* United States, *supra*, observed:

It is perhaps fair to conclude from the two samples that the silk threads tied in at the ends of the mufflers are a part of a proper hemming process thereof, as to us they seem likely to more effectually prevent the ends of the mufflers from unraveling than does the turning back and loosely sewing down the ends in one sample, or the treatment, whatever it may have been, that has been given to the ends of the other. The unraveling of either could hardly proceed further than these tied-in threads. If the overwhelming, whatever it is, is not hemming, then these are of course not hemmed, and a question might be made whether the tied-in silk threads were more than the mere finishing which the words "finished or unfinished" in the paragraph imply.

The testimony quite uniformly confirms this previously expressed theory of the court. It is to the effect that the introduction of the silk threads which form the fringed effect is necessary in order to complete and make effective and at all durable the finished end of the fabric. It is to the effect that without application of this process. neither the overwhelming nor overlapping process would make a durable or satisfactory finish of the article. It was in that view that the court reversed the board in the case of Hensel, Bruckmann &. Lorbacher *v.* United States, and which view, as stated, is confirmed by substantially all the testimony in this record. It is clearly shown herein that the threads are in all cases introduced to perfect and hold in place the overwhelmed and overlapped edges and are necessary thereto as well as for ornamentation. An examination and test of the samples confirms this view. Being necessary .to complete the hemming process or its equivalent this can not be said to be a process beyond hemming either as a process or status of manufacture.

Indeed, it may be seriously doubted whether or not this effect. produced by the silk threads upon the ends of the articles is a fringe within the language of these provisions of the tariff law. It will be

noted that paragraph 402 enumerates, as materials or articles specifically named for dutiable purposes, "fringes," and in the proviso thereto, which is relied upon by the Government, speaks of "articles composed wholly or in chief value of any of the *materials* or *goods* dutiable under this paragraph." Obviously, what Congress has in mind here is a separate, complete, and distinct made-up article or material of merchandise, to wit, a "fringe," bearing that name as designated in the law and which in its uses may be *per se* and as a fringe applied to or in the construction of another article as an individual part or material thereof. In this case we have no such material as or known as a "fringe" applied to or which enters as a material or article into the manufacture of the imported article. On the contrary, as it comes to union with this fabric it is a silk thread or collection of silk "threads" so known and otherwise named in the tariff law tied into the fabric to more effectually prevent the ends thereof unraveling, as well as, of course, for the incidental ornamental effect. The same view disposes of the contention of the Government that these are "trimmings" or "ornaments" within said paragraph 402, and that being so introduced into the fabric brings it within the provisions of the paragraph and its proviso.

We are of the opinion that the decisions of the Board of General Appraisers should be, and they are, *affirmed.*

SMITH, Judge, did not participate in the hearing or decision of these cases.