FROST
v.
GARRETT et al.

17  135
44  1021

---

HANNAH S. FLYNN v. MERCHANTS' MUTUAL INSURANCE CO.

Evidence of fraud, etc., in an action on a policy of insurance, can only be admitted when specially pleaded; it is not admissible under the plea of the general issue.
What third persons said out of court, and oral testimony of criminal proceedings, is not the best evidence, and inadmissible.
Where a criminal charge is to be proved by circumstantial evidence, the proof ought not only to be consistent with the prisoner's guilt, but inconsistent with any other rational conclusion.
Where the testimony, as to the amount of a certain portion of the goods destroyed, is vague and uncertain, that part will be reserved for further action.

APPEAL from the Fifth District Court of New Orleans, *Eggleston*, J. *Field & Shackleford* and *Whitaker, Fellows & Mills* for plaintiff and appellant. *Durant & Hornor* for defendant.

ILSLEY, J. The plaintiff claims in the Fifth District Court of New Orleans, from the defendant, on a policy of insurance, two thousand dollars, for loss and damage by fire, to her stock of millinery, store fixtures

FLYNN          and household furniture. The risk assumed by the defendants was as
*v.*
MERCHANTS'INS. follows:

1. On her millinery goods ........................$700
2. Store fixtures.................................. 500
3. Household furniture........................... 800

The answer is the general issue.

Condition 8, in the policy, is in the following words:

" Also, if there appear any fraud or false swearing the claimant shall
forfeit all claims by virtue of this policy."

On the trial of this case, the defendants took certain bills of exception
to the ruling of the court; excluding testimony offered by them to show
that the plaintiff by her fraudulent conduct had forfeited all right to
claim any indemnity under the policy for her alleged losses.

The objection to the testimony offered, as set forth in the bills of excep-
tion, Nos. 1 and 2, was grounded on the absence of any special allegation
of fraud to justify its admission, and the correctness of the ruling de-
pends upon the rule, which this court has finally adopted, on this vexed
question of pleading and proofs. Two decisions of the late court are
referred to by the appellees to justify the admissibility of this testi-
mony.

The first case is that of *Kennedy* v. *The New York Life Insurance Co.*,
10 Al. 809. It was therein held: "Under the plea of general issue, the
defendant might give in evidence the illegality of the contract, coverture,
lunacy, and, in fine, everything which would show that the plaintiff can-
not recover. 3 Greenleaf, No. 135.

In 12 An. 39, *Hatchman* v. *Gondelbet Insurance Co.*, the court, referring
to a previous decision in 9 An., 590, *Matthews* v. *Insurance Company of
New York*, said: "Under the English practice, which has certainly not
often been more indulgent than ours, the plea of the general issue to an
action on a policy of insurance, was formerly sufficient to let in evidence
of illegality, misrepresentation, breach of warranty, or almost every other
matter that would discharge underwriters. 2 Arnould Ins. 1286.

By the new rules of pleading adopted on the King's Bench, in 1834,
matters showing the transaction to be void or voidable on the ground of
fraud, must be specially pleaded. Evidence was not excluded in either of
these cases, because notice was given by the defendants in their answers,
of their intention to prove fraud. In neither case, however, was there any
specification of the mode and circumstances of the fraud, but such plead-
ing was recommended by the court. The plea of intention to prove fraud
was considered sufficient to let in the proof in the cases cited. We deem
it safe to adopt the view taken by our predecessors, as being one calcu-
lated to remedy loose practice and to prevent surprise. Another case,
not yet published, *Loundes* v. *Merchants' Mutual Insurance Company*,
(Opinion Book, b. 29, fol. 17), is referred to as sustaining the old rule, and
making testimony to show fraud admissible under the general issue; but,
on examining that case, we do not discover that it bears that inter-
pretation.

In that case, the underwriters had specially set up in their answer the
false swearing by the assured, as a fraud, which the court held it to be,
and evidence under that special allegation was properly admitted.

In the case at bar only the general issue is pleaded, and under that plea alone the evidence offered was not admissible.

The deposition of *Mary Sparks* was properly excluded. She should have been produced or satisfactory evidence adduced to show that due diligence had been used to discover where she was, which does not appear.

*Tappan's* testimony was inadmissible to prove the general opinion of witnesses, whose duty and business it was to seek a witness, *Mary Sparks*, as to her "whereabouts;" as those witnesses themselves should have been produced, their testimony being better than unsworn opinions or declarations, made by them out of court; and so of the proceedings of the criminal prosecution, their production was properly insisted on as the best evidence.

We have examined with considerable care all the evidence adduced in this case, and we have been unable to discover any act of the plaintiff from which to infer fraud.

The main facts relied on by the defendant, from which fraud is presumed by them, are those narrated in their brief. The first one is that, on the day previous to the burning of the store, one J. B. Bradley, a constable, who had two writs of *fi. fa.* against the plaintiff, was requested to call next day under a promise of payment.

In this request we can perceive nothing but a very natural desire to be rid, at least for that day, of a very disagreeable visitor. This, notwithstanding the fire, is not a circumstance on which it would be fair to found a charge of fraudulent intention to commit the heinous offence of arson. The next specifications can be stated together : "The flames seemed to come from under the counter; the top shelves were empty; at the same time the plaintiff had goods already put up in boxes and trunks, with the store looking-glass, all on the sidewalk, while the store was locked up, and the plaintiff, with a cab in attendance, ready to drive off. After the fire, the witness *Carrico* examined the store; found boxes piled up in the middle of the store, half burned and *no goods in them;* boxes on the shelves and *no goods in them;* discovered that the fire originated under the counter; there were no remnants of burnt goods in the store."

The only witnesses who testified to these matters were two policemen, *G. Carrico* and *Charles Oilff;* the latter, however, confining his testimony to what occurred during the fire. After some preliminary statements, he says : "When we burst open the door we saw the fire under the counter; the blaze was pretty much up, and I could not see much, but saw that the shelves were empty. I did not go into the store after the fire was got out." He says, also, "I went with *Carrico* to the corner of Rampart street, and there I saw Mrs. Flynn standing by some trunks and boxes." He says, in cross-examination, the flames blazed up when the door was opened, but there was not much smoke; but *Carrico's* testimony is deemed conclusive, and it has therefore been scanned with more than ordinary attention. He was present at the bursting open the door; and he says, "when the door was burst open we had to run away; everything was in a blaze. Just as soon as the door was burst open, the flames seemed to come from under the counter. I could see that the *top* shelves were vacant; and then the flames burst all over and we had to run away from the door."

FLYNN
v.
MERCHANTS' INS.

This witness also saw Mrs. Flynn on the side-walk on Rampart street,. and describes minutely what she had with her: a large box of goods and two large trunks, a looking-glass, a German clock and two carpet bags. He describes the contents of the box: some card ribbon, lace needles, etc.

He says: "I saw no lamp in the store; there were gas pipes, but I do not think they had exploded." And now comes the most important part of the testimony of this witness: "After the fire was exhausted, I went into the store and saw empty boxes piled up and half burned, and nothing in them; the boxes in the shelves were not burned; they were empty hat boxes. I attempted to find where the fire originated, and discovered that it originated under the counter. We found nothing but the empty wooden boxes half burned. On his cross-examination, he says the house was entirely burnt out by the fire; the store was entirely burnt up, not in ashes; there were a few shelves in the back part half burned; the front part of the store was entirely burned." In this connection, it is well to refer to the testimony of *L. Gastinel*, Lieutenant of Police.

He says: "I passed the house after the fire; it looked to me entirely burnt. When I reached the spot, the lower part of the house was all in flames; the upper part of the house was also burning."

"*I examined the spot, after the fire had been extinguished*, and saw that the house was in ruins," says *Fabean*, another policeman; and, from all this testimony, it is fair to infer that the store was entirely burned up; at all accounts, it may be supposed that not a vestige of the counter was left, as the fire is supposed to have originated under it; and yet this witness, *Carrico*, after the fire was exhausted, goes deliberately into the store and makes the important discovery that empty boxes were piled up, etc.; and he *then* discovered that the fire originated under the counter, and that the boxes on the shelves, which he and *Oilff* said, previously, were vacant, were not all burnt; they were empty. *Carrico* says the shelves were in the back part of the store, half burned; and that was where the empty boxes were, as they would probably be, if there at all.

The zeal of this witness outrides his discretion. He proves too much. He discovers *after* the store, and particularly the counter, had been entirely consumed, that the fire originated under the counter. Credulity itself could not be imposed on by such a statement, and we attach no weight whatever to his testimony.

The only circumstances which might militate against the plaintiff, are the apparent origin of the fire, the empty shelves, and her readiness for departure, with boxes and trunks and the store looking-glass, with a cab in attendance.

The apparent breaking out of the fire under the counter, if assumed to be true, which, however, the testimony does not render very certain, as the store was all in flames when the door was burst open, would not, of itself, implicate the plaintiff. It might have been the work of an incendiary, or have been accidental, and the hurried inspection of the shelves, when the door was burst open, could hardly have been a satisfactory one.

The plaintiff, "in a long white gown," was on the sidewalk with Mr. Logan, and with her were some trunks, a box, etc., the latter of which might, from their nature, have well been in the working-room over the

the kitchen, as was probably the store looking-glass, which, *Eugene Mar-*
*tin,* a witness, says had been taken out of the store a month before.
ownership of the trunks and other articles is not shown, although *Mr.*
*Logan* says that one of them, when opened, appeared to contain some
ladies' under-dresses. There is nothing suspicious in all this to fix fraud
on the plaintiff.

"Where a criminal charge is to be proved by circumstantial evidence,"
says Greenleaf, "the proof ought to be not only consistent with the
prisoner's guilt, but inconsistent with any other rational conclusion;"
and, although this is a civil and not a criminal proceeding, we think the
rule not inapplicable.

It remains only to ascertain the plaintiff's loss.

The testimony being vague and unsatisfactory, in relation to the stock
and value of the millinery goods destroyed, no allowance can now be made
her for this part of her claim ; but it will be reserved for further action.
1 Hen. Dig. (new ed.) p. 739, § 5.

The value of the store fixtures is assumed to be one hundred and thirty-
two dollars, being the price she paid for them.

As to the value of the household furniture, which, it is shown, was en-
tirely destroyed, there is a discrepancy in the testimony : one witness fix-
ing it vaguely at one thousand dollars, and two others at three hundred.
One of the witnesses who adopt the last valuation, being conversant in
such matters, we adopt it as the correct one.

It is therefore ordered, adjudged and decreed, that the judgment ren-
dered by the court below be annulled, avoided and reversed, and proceed-
ing to give such judgment as should have been rendered therein, it is or-
dered, adjudged and decreed, that judgment be and it is hereby rendered
in favor of the plaintiff, Hannah S. Flynn, and against the defendant, the
Merchants' Mutual Insurance Company of New Orleans, for the sum of
four hundred and thirty-two dollars, with legal interest from judicial de-
mand, and that the defendants and appellees pay the costs in both courts.
It is further ordered, that the claim of the plaintiff for the value of her
stock of millinery goods destroyed by fire, be and the same is hereby re-
served to her for future proceedings.