WADLEIGH *et al.* v. HOME INS. CO. *et al.*

No. 2606.   Opinion Filed June 10, 1913.

(132 Pac. 1111.)

**INSURANCE—Fire Insurance—Books of Account.** A book showing "all purchases and sales, both for cash and credit" within the meaning of a warranty in a policy of insurance, requiring the insured to keep a set of books showing a complete record of business transacted, including all such purchases and sales, need only be such as will show these matters to a man of ordinary intelligence, but plaintiffs' ledger, showing the amount of cash deposited at intervals of from one to four days in the bank, after deducting all expenses of the business for each day of the risk preceding the fire, is not a substantial compliance with said warranty.

(Syllabus by the Court.)

*Error from Superior Court, Pittsburg County;*
*P. D. Brewer, Judge.*

Action by F. A. Wadleigh and others against the Home Insurance Company and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

*Wm. H. Fuller* and *Geo. M. Porter,* for plaintiffs in error.
*Burwell, Crockett & Johnson,* for defendants in error.

TURNER, J.   On January 20, 1910, plaintiff in error F. A. Wadleigh, and Tom Hale, his agent, in the district court of Pittsburg county, sued Home Insurance Company and three other such companies, defendants in error, on their four separate policies for $500 each, insuring said Wadleigh against loss by fire of a stock of goods belonging to him, located in his store building at Beggs. After issue joined, and, in effect, a consolidation thereof by stipulation, there was trial to a jury, and at the close of plaintiffs' evidence a verdict directed for defendant, upon which judgment was rendered and entered, and plaintiffs bring the case here.

To maintain the issues on his part Wadleigh, after establishing a loss covered by the policies, proved that there

was a disagreement between the adjuster for the companies and himself as to the amount thereof, whereupon, without further attempt on his part to comply with the terms of the policies concerning an ascertainment of the amount of the loss, he brought this suit. The policies are the standard form. After providing that the company shall not be liable beyond the actual cash value at the time of the loss, to be ascertained by the insured and the company, in case they should differ, "then by appraisers as hereinafter provided," the policy further provides: "and the amount of loss or damage having been thus determined, the sum for which this company is liable &pursuant to. this policy shall be payable sixty days after due notice, ascertainment, estimate and satisfactory proof of the loss has been received by this company, in accordance with the terms of this policy. * * . * In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire. The appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss. The parties thereto shall pay the appraisers respectively selected by them, and shall bear equally the expense of the appraisal and umpire. This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required. * * *"

It is the effect of plaintiff's contention that "including an award by appraisers when appraisal has been required" means required by the party desiring it, and, as it was not required by the company, an award by appraisers was not a condition precedent to the suit. Whether the court erred in holding adverse to this contention we need not say, as the court did right in directing a verdict for defendants on the ground that the insured failed to comply with that part of the "iron-safe clause," which reads:

"The assured will keep a set of books, which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales and shipments of stock, both for cash and credit, from the date of the inventory provided for in the first section of this clause, and during the continuance of this policy."

As two of the policies involved were dated February 18, 1909, and two March 17, 1909, and the loss, a partial one, occurred July 12, 1909, the risk at most covered a period of four months and twelve days. In instructing for defendant the court held that upon the undisputed facts plaintiff had failed during that time to keep a record of his cash sales within the contemplation of the terms of the policy. Upon this point the record discloses that, while the plaintiff kept no cash book, as had been his custom since purchasing the business the fall before, at intervals of from one to four days during the continuation of the risk he would take the money out of the cash drawer, make out a deposit slip, deposit the money in the bank, and enter the same in his ledger (as a sample) thus:

F. A. Wadleigh Bank Account.    -       .
The Farmers' State Bank.

[Page 72]

| Bal. | 17 | Deposits | ..............................$100.85 | Checks given: |
| Feb. | 12 | " | ............................ 18.85 | |
| " | " | " | ............................ 200.00 | ............................ $ |
| " | 18 | " | ............................ 23.00 | |
| " | 20 | " | ............................ 27.00 | [Naming them, together with |
| " | 23 | " | ............................ 29.00 | the amount of each.] |
| " | 25 | " | ............................ 17.00 | |
| " | 27 | " | ............................ 25.00 · | |

| March 3 | " | .......................... | 34.00 |
| " 4 | " | .......................... | 12.00 |
| " 5 | " | .......................... | 134.20 |
| " 6 | " | .......................... | 33.00 |
| " 10 | " | .......................... | 33.00 |
| And ending: | | | |
| July 1 | Deposits.........................$ | | 25.00 |
| " 2 | " | .......................... | 20.00 |
| " 3 | " | .......................... | 40.00 |

—leaving no record of his cash sales for eight days before the fire except upon his last passbook which was thus destroyed; that he had a family consisting of a wife and four children, and got all the family supplies out of the store except meat, which he paid for out of the cash drawer; that chickens and eggs and things of that kind were paid for in trade, and no entry thereof; that he and his wife only clerked in the store, and paid all expenses of the business out of the cash drawer. He testified:

"Q. Then the deposits you made in the bank were not your actual cash sales, but your actual cash sales less your various amounts you had paid out in your business? A. Yes, sir. Q. You have to take those amounts to get your actual cash sales? A. Yes, sir. Q. In a day's business, if you put the cash in the cash drawer, and various freight bills and express bills and other items you took out of the cash drawer came in before you deposited in the bank, you had already taken out this money to pay for those bills? A. Yes, sir. Q. Then your bank book does not represent your actual cash sales, does it? A. Not altogether. Q. There has to be deducted from it the various items that you had already taken out of the cash drawer? A. Yes, sir. * * * Q. Can you take your books and tell what you sold on July 11th, on the day before the fire? A. Yes, sir; if I sold anything on credit that day. Q. Can you tell the cash sales that you made on July 9th? Q. No, sir; I cannot. Q. Can you tell the cash sales you made on July 8th, or any other day during July? A. No, sir. Q. In fact you cannot tell and you have no record that will absolutely show the cash sales you made any day? A. No, sir; no correct cash sales. Q. You kept no record of your cash sales at all except the bank book? That is all."

This was not a substantial compliance with the terms of the warranty.

*Shawnee Fire Insurance Co. v. Thompson & Rowell,* 30 Okla. 466, 119 Pac. 985, was a suit upon an insurance policy containing this clause, which covered a risk on the stock of goods belonging to plaintiffs, who were retail merchants at Ralston. The policy issued October 22, 1907, and the loss occurred October 30, 1907, or eight days after the date of the policy. There was a demurrer to the evidence, which was overruled, judgment for plaintiff, and the company appealed. But this court reversed the judgment, and, speaking through Robertson, C., in the syllabus said:

"Books showing 'all purchases and sales, both for cash and credit' within the meaning of a warranty in a policy of insurance, requiring the insured to keep a set of books showing a complete record of business transactions including all such purchases or sales, need only be such as will show these matters to a man of ordinary intelligence, but plaintiff's Exhibit D, which was a small private pocket ledger, showing the amount of cash deposited in the bank, after deducting all expenses of the business, and covering a period of three weeks preceding the fire, is not a substantial compliance with said warranty, especially in view of the fact that the insured negligently permitted his books, including the cashbook, to remain without the fireproof safe and be destroyed by fire."

See *German, etc., Ins. Co. v. Fuller,* 26 Okla. 722, 110 Pac. 763.

We are therefore of opinion that the court was right in sustaining a demurrer to the evidence, and hence judgment is affirmed.

HAYES, C. J., and KANE and DUNN, JJ., concur; WILLIAMS, J., not participating.