**SPRINGFIELD FIRE & MARINE INS. CO. v. GRIFFIN.**

**FRANKLIN FIRE INS. CO. v. SAME.**

**PHOENIX INS. CO. OF HARTFORD v. SAME.**

No. 8167—Opinion Filed Jan. 2, 1917.

On Rehearing, July 10, 1917.

(166 Pac. 431.)

1. **Insurance — Iron-Safe Clause — Compliance.**

Under the facts of this case, held, that the "book warranty and iron-safe clause" is a promissory warranty, and the production by the insured of his last inventory and the next preceding inventory, together with a complete set of books kept from the date of the last inventory to the date of the fire, is a compliance with the said warranty of said policy.

2. **Insurance—Conditions—Construction.**

A condition that would defeat an insurance policy must be expressed, or so clearly implied that it cannot be misconstrued.

3. **Appeal and Error—Evidence—Discretion of Trial Court — Admission of Opinion Evidence.**

The question of opinion evidence is addressed very largely to the sound discretion of the trial court, and its ruling that the witness is sufficiently qualified will not ordinarily be disturbed, unless it clearly appears that this discretion has been abused.

4. **Insurance—Fire Insurance—General Denial—Willful Burning.**

A general denial is insufficient in an action on a fire insurance policy to present the issue of the willful burning of the property by the insured.

(Syllabus by Edwards, C.)

Error from District Court, Johnston County; J. H. Linebaugh, Judge.

Separate actions by J. T. Griffin against Springfield Fire & Marine Insurance Company, a corporation, and Franklin Fire Insurance Company, a corporation, and Phoenix Insurance Company, a corporation, consolidated in the trial court. Judgment for plaintiff and against each defendant, and defendants bring error. Affirmed.

Scothorn & McRill, for plaintiffs in error.

Horton & Smith, for defendant in error.

Opinion by EDWARDS, C. The parties will be referred to as plaintiff and defendant, according to their position in the lower court. This action was commenced in the district court of Johnston county, Okla., by J. T. Griffin, as assignee of A. L. Payne, the assured, upon a policy of insurance issued by the defendant, Springfield Fire & Marine Insurance Company, for a loss sustained by the assured on the 10th day of September, 1914. There were two companion cases, each brought by the plaintiff, J. T. Griffin, as assignee, one against the Phoenix Insurance Company of Hartford, and the other against the Franklin Fire Insurance Company. A stipulation was filed in court in which it was agreed by and between the parties that the three actions might be consolidated for the purpose of trial and all future action either in the trial or appellate court, but that separate verdicts should be returned and separate judgments rendered, but that all should be covered by one journal entry, and

that the appeal should be joint, in that the pleadings in the various causes should be incorporated in one case-made, together with the testimony taken in the consolidated case. The pleadings in the case as consolidated are practically identical. The petition is in the usual form, and alleges that A. L. Payne was the owner of the stock of merchandise insured on November 3, 1913, alleges the issuance of the policy with copy attached, and the loss and damage on the 10th day of September, 1914, and the furnishing of the proof of loss and the assigning and transferring of the policy to the plaintiff herein. The answer of the defendant, after formal admissions, is: First, a denial that the policy was in force on the 10th day of September, 1914. Second, the defendant alleges that the policy contained an inventory and book warranty clause, followed by the allegation that the assured, A. L. Payne, had failed to make a substantial compliance therewith, thereby rendering said policy null and void. The defendant tenders the full amount of the premium received on said policy into court for the use and benefit of the plaintiff. Third, the defendant alleges that the policy is void by reason of false swearing of the plaintiff in making proof of loss. Fourth, that the assured at the time of the loss had violated that clause of the policy limiting the amount of insurance on the property to three-fourths, and had at the time total insurance in excess of three-fourths the actual cash value of the stock; the reply is a general denial. The verdict was for the plaintiff, and the defendant, after the overruling of its motion for new trial, in due time appealed to this court.

The plaintiff in error assigns and argues several grounds for reversal, which will be considered in the order presented. The first assignment is that the trial court erred in overruling the defendant's demurrer to the evidence of plaintiff. In order to make clear the contentions of the plaintiff and defendant upon this assignment, it is necessary to state a portion of the evidence.

The evidence shows that the policy of the Springfield Fire & Marine Insurance Company was issued on November 3, 1913; the policy of the Phoenix Insurance Company, February 16, 1914; and the policy of the Franklin Insurance Company, March 4, 1914. Prior to the issuance of said policies and on or about July 1, 1913, the assured took an inventory, and, subsequentl to the issuance of said policies and about July 1, 1914, the assured took another inventory. The fire which caused the loss occurred on the 10th day of Septemebr, 1914. It further appeared from the evidence that the assured kept books of account showing purchases and cash and credit sales from the time of taking his inventory in July, 1913, until the taking of the inventory in July, 1914, but at the time of the fire these were not in the safe and were burned, except the unpaid individual credit accounts, which were in the safe and were preserved. From the time of the inventory of July 1, 1914, to the time of the fire, the assured kept books showing a complete itemized account as required by the policy. After the fire both the inventories of July 1, 1913, and July 1, 1914, together with said books of account showing the purchase of merchandise and cash and credit sales subsequent to the July, 1914, inventory, were produced, but the record of his purchases and cash sales between July 1, 1913, and July 1, 1914, being destroyed by the fire, were not produced, and the assured testified that he had no way of telling how many goods were purchased between said dates, and had no way of telling how many goods were sold between said dates, except by guesswork.

Upon this state of the record the defendant contends that there is a violation of the book warranty clause of the policy. It is the theory of the defendant that the inventory taken July 1, 1914, with the last preceding inventory, that of July 1, 1913, must be preserved and produced in case of loss and that it is also necessary that the books be kept during the continuance of the policy, and be produced in case of loss, and that a failure to do so is a breach of the promissory warranty contained in such clause, and voids the policy. The contention of the plaintiff, on the other hand, is that there has been not only a substantial performance of the book warranty clause of the policy in question, but a complete performance of the terms of that clause, it being the theory of the plaintiff that the inventory required by the first section is an inventory to be taken in the future, as it is after this inventory is provided for in section 1 that section 2 requires the insured to keep books; that is, that books are not required to be kept until an inventory is taken under the policy and this inventory, together with the last preceding inventory, together with the books mentioned, the books kept after such last inventory, must be produced; that the only requirement as to any records to be kept antedating the last inventory is the keeping and producing of the last preceding inventory; that the assured is required after taking an inventory to keep a set of books thereafter until the taking of the next inventory, and is

not required to produce the books kept ante-dating the last inventory

The inventory and book warranty clause is in three sections, as follows:

"1. The assured will take an itemized inventory of stock hereby insured at least once in each calendar year, and unless such inventory shall have been taken within twelve (12) calendar months prior to the date of this policy, the same shall be taken in detail within thirty (30) days after said date, or this policy shall be null and void from and after the expiration of said thirty (30) days, and upon demand of the assured, within three months from date of this policy, the unearned premium for the unexpired time of this policy shall be returned.

"2. The assured will keep a set of books which shall clearly and plainly present a complete record of the business transacted, including all purchases, sales and shipments of such stock both for cash and credit, from the date of the inventory provided for in the first section of this clause, and during the continuance of this policy.

"3. The assured will keep such books and inventory, and also the last preceding inventory, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy or the portion thereof containing the stock described therein, is not actually open for business, or, failing in this, the assured will keep such books and inventories at night, and at all such times in such place not exposed to fire which would ignite or destroy the aforesaid building; and in case of loss the assured specifically warrants, agrees and covenants to produce such books and inventories for the inspection of said company. In the event of failure on the part of the assured to keep and produce such books and inventories for the inspection of said company this entire policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

A decision of the contention here made depends upon the time from which the keeping of books required by section 2 of the book warranty clause shall date. Omitting the modifying clauses in this section, it reads:

"The assured will keep a set of books * * * from the date of the inventory provided for in the first section of this clause, and during the continuance of this policy."

Under this section, when shall the keeping of books commence? Not from the date of the policy, because section 2 does not stipulate for that. It stipulates that books shall be kept from the date of the inventory provided for. Then, what inventory is provided for in the first section? The first section mentions three inventories, or inventories under three different contingencies: First, the inventory taken within 12 calendar months

prior to the date of the policy, if one has been taken. Second, an inventory taken within 30 days from the date of the policy, if none had been taken within the 12 months preceding the date of the policy. Third, an inventory to be taken within 12 calendar months from the preceding inventory whether the last inventory be either the first or second just mentioned.

Here, then, are mentioned three conditions under which a different inventory might be referred to in section 1. Then, does section 2, in referring to the inventory to be taken in section 1, refer to the inventory taken within the 12 calendar months preceding the date of the policy in case one has been taken, or does it refer to the inventory to be taken within 30 days after the date of the policy, if none was taken within the 12 calendar months next prior to the date of the policy, or does it refer to the inventory to be taken within 12 calendar months from the preceding inventory, or to all of them as dependent upon the conditions in the particular case? Let it be observed that the said second section uses the term, "inventory provided for in the first section." The term "provided for," as here used, contemplates something to be done in the future, and in referring to the inventory carries the idea of inventory to be taken, not to one already taken. It has a future significance, and the taking of an inventory already completed could not be said to be provided for.

The entire clause embracing sections 1, 2, and 3 is a promissory warranty, and comprehends those things in reference to the inventory and books which the assured promises, covenants, and warrants to perform. Not existing things, or things already completed, but things to be performed. Each section begins with a promise. "The assured will." The promise is that he will take an inventory and will keep books; not that he has taken an inventory and has kept books. Applying this line of reasoning to the conditions as they exist in this case, an inventory having been taken July 1, 1913, and within 12 months prior to the date of the policy, and another on July 1, 1914, within 12 calendar months from the date of the prior inventory, then if it should be said that the inventory referred to in section 2 as provided for in section 1 is the one taken in July, 1913, we will have the absurd condition of the assured promising, in November, 1913, to take an inventory and to keep books (future tense) from July, 1913. It seems clear to us that, in the abstract, the inventory provided for in section 1 is

an inventory to be taken either within 30 days from the date of the policy in case one had not been previously taken within 12 calendar months, or an inventory taken within 12 calendar months from the one last taken in case one had been taken within the prior 12 calendar months. In the case at bar an inventory was not by the terms of the policy required within 30 days, but was required within 12 calendar months, and was taken as required on July 1, 1914.

Then what is meant by the latter part of the second section, "and during the continuance of this policy"? Does not this part of the section, it may be argued, require the keeping of books from the date of the policy during its continuance? This language, considered in view of the context, clearly means that from the date the duty to keep books once attaches it continues during the life of the policy. It is not to be read separate from the preceding part of the section of which it is a part. It has often been held that, if a policy of insurance is susceptible of two constructions, that one is adopted which is more favorable to the insured. Taylor v. Insurance Co., 25 Okla. 92, 105 Pac. 354, 138 Am. St. Rep. 906; Oklahoma National Life Ins. Co. v. Norton, 44 Okla. 783, 145 Pac. 1138, L. R. A. 1915E, 695, in which latter case numerous cases are cited. But we do not base our decision on this point upon that line of authority. It would be easy for the insurance company to definitely express the date or point from which it is the duty of the insured to keep books. We think the time is fixed by the foregoing clause, but not so clearly as might be. A condition that would defeat an insurance policy must be expressed, or so clearly implied that it cannot be misconstrued. Policies should be particularly construed in favor of the insured so as not to defeat, without a plain violation of the terms of the policy, the claim of the insured for indemnity.

We are not oblivious to the contention of plaintiff in error that this court has heretofore taken a contrary view and has held that books must be kept during the continuance of the policy; i. e., from the date of the policy. Plaintiff in error contends that this holding is made in the case of Shawnee Fire Insurance Co. v. Thompson & Rowell, 30 Okla. 466, 119 Pac. 985. In that case the policy was issued October 22, 1907; the loss occurred October 30, 1907, or eight days after the date of the policy. There was but one inventory, that taken in the preceding January. An inventory was attempted to be taken on October 1st, but the court held that the records made were wholly insufficient to

constitute an inventory, so there was in fact no inventory except the January inventory. The January inventory in that case was taken prior to the date of the policy, also the October inventory attempted to be taken was likewise prior to the date of the policy; there was no inventory taken or attempted to be taken during the continuance of the policy. The court, in discussing the attempted October inventory, says:

"No discussion is needed to demonstrate that the inventory in question fails to meet the requirements of this definition. From the items given it is impossible to ascertain either the quantity, the number of items included in the summarized entry, the value per item, the reasonableness of the gross valuation, or whether they were properly within the purview of the policy. The inventory furnishes nothing upon which to base a calculation. * * * Then if the October, 1907, inventory was not a compliance with the terms of the contract, and no substantial excuse having been offered for the failure of the insured to keep the January inventory, together with the books, in a fireproof iron safe, we must hold that there was no such compliance with the terms of said contract, on the part of the assured, as would warrant a recovery or sustain a judgment on said policy."

The decision is not entirely logical, but it may be gathered from the foregoing that if the court in that case had found the attempted inventory taken in October to be sufficient, and the preceding inventory of January had been produced or satisfactorily accounted for, it would have held the insurance company liable under the policy; the court, in its opinion, further saying:

"Yet, it is seen that it was not only necessary to preserve the inventory on hand at the date the policy was issued, it having been issued within 12 calendar months, but that it was also necessary to preserve the next preceding inventory as well. Therefore, no matter how the October inventory is treated, whether sufficient or not, according to the plain terms of the policy, the insured were bound to produce the preceding inventory, or to show good reason for not doing so. No reasonable excuse has been offered, and no substantial compliance with the terms of the policy has been had in that regard. However, we hold that the October inventory was not a sufficient compliance with the terms of the policy to excuse the production of the January inventory, especially when it is admitted by the plaintiffs that such an inventory had been taken, but was negligently permitted by them to remain, together with all the other necessary books and papers, without the iron safe, and thus be destroyed by the fire which destroyed the stock, and thereby prevented the defendant from securing that evidence as to the actual loss of the insured which the very terms of

the contract which they now seek to recover under provided should be done. * * * "

In our view the case does not hold as contended by defendant, but is founded on a failure to preserve the last and next preceding inventory. Another case from this court relied upon by the plaintiff in error in support of its contention is the case of Wadleigh et al. v. Home Insurance Co. et al., 38 Okla. 316, 132 Pac. 1111. In this case it is not disclosed when an inventory had been taken, but presumably within 12 months prior to the date of the policy; this case simply holds that it is necessary for the insured to keep a set of books, showing a complete record of business transacted, including all purchases and sales, and that same need be only such as will show these matters to a man of ordinary intelligence, and concludes by holding that the cashbook in that case was insufficient to constitute a substantial compliance with the warranty clause. The question here under consideration was neither presented to nor decided by the court in that case, and nothing is said as to the time from which the keeping of books should date.

The only other Oklahoma case cited by counsel for plaintiff in error in support of its contention is Scottish Union & National Ins. Co. v. Cornett et al., 42 Okla. 645, 142 Pac. 315. In that case the defense was that the insured had violated the iron safe and inventory clause of the policy. All the books and accounts and inventories were destroyed in the fire, and the opinion does not disclose that any excuse for such loss was made; nothing is said about the date of the policy, the inventory or the fire, and the plaintiff contended that the conditions imposed by this clause had been waived, and the court simply held that the iron safe and inventory clause of the policy was valid and for the benefit of both parties, and, further, that in view of a nonwaiver agreement made by the parties there was no waiver of the conditions contained in such clause. That is the sum and substance of the opinion.

The only other case cited in support of the contention is the case of Miller v. Home Ins. Co., 127 Md. 140, 96 Atl. 267. The facts in that case are these: The policy was dated May 29, 1913; was delivered on June 12, 1913; the fire occurred July 5, 1913, less than 30 days after the delivery of the policy. The assured had purchased the stock and fixtures, and as a basis for the purchase an inventory was made upon which he paid $925, and testified that the stock was increased by purchases aggregating $2,500. He took charge of the stock upon purchasing

same, but kept no books showing his purchase and sales, having merely noted in a memorandum book the amount of cash received. He made no provision whatever, by iron safe or otherwise, for protection of his papers from destruction by fire, and no contention of substantial compliance with the iron safe and book clause is alleged. The policy is sought to be avoided on the claim that the inventory taken at the time of purchase was not such an inventory as was contemplated by the policy, and that, therefore, as no inventory had been taken within 12 months prior to the issuance of the policy, the insured had 30 days from delivery thereof within which to make such an inventory and to commence keeping books, which period had not expired when the fire occurred. A verdict was instructed, and the insured appealed, and the court held that the inventory made at the time of purchase was within the terms of the policy, although taken two weeks before the date of the policy. This case seems to sustain the contention of plaintiff in error that books must be kept, beginning with the date of the policy, and during its continuance. But the opinion is not well reasoned, and will not be followed here.

The construction we have given sections 1 and 2 of the book warranty and iron-safe clause is not without support in the authorities, although there seem to have been very few decisions on the precise point here involved. This court, in the case of Scottish Union & National Insurance Co. et al. v. Moore Mill & Gin Co., 43 Okla. 370, 143 Pac. 12, in discussing a book warranty clause in the policy there involved, which was different, however, from the clause here, in that it required the assured to keep a book containing a faithful record of all cotton put into or taken from the gin or cotton house, says:

"It is apparent that this book warranty clause was not retrospective in its nature, and that the book of faithful record required thereby to be kept was not intended to cover transactions prior to the date of the execution of the policies. In other words, it required that plaintiff keep the book referred to beginning with that date, and show thereby a 'faithful record of all cotton put into or taken from' these warehouses, beginning with the dates of the policies."

This is pertinent here only as an expression of this court that the book warranty clause is prospective, and not retrospective. In the case of Arnold v. Indemnity Fire Ins. Co. et al., 152 N. C. 232, 67 S. E. 574, the court in the fifth paragraph of the syllabus holds:

"An iron-safe clause provided for annual inventories, and that if assured had not taken a complete itemized inventory within

a year prior to the issuance of the policy, he should take one within 30 days of the issuance of the policy, and provided for the keeping of books, etc, and also provided that the assured should keep such books and inventories, and also 'the last preceding inventory,' if taken, securely locked in a fireproof safe, etc. Held, that the stipulation as to the last preceding inventory referred to was confined to inventories taken under the contract of insurance and after it was entered into."

In the case of Hanover Fire Ins. Co. v. Dole, 20 Ind. App. 333, 50 N. E. 772, it is held that the book warranty and inventory clause should be considered together, and that under such provisions the insured was only required to take an inventory at some time within a year from the time the policy is issued, and thereafter to keep books as provided; however, this holding was not necessary to a decision of the case, since the court held that such conditions were waived by the insurer, hence this case is not entitled to much weight. The case of Liverpool & London & Globe Ins. Co. v. Sheffy, 71 Miss. 919, 16 South. 307, cited with approval by this court, in the case of Scottish Union & National Ins. Co. et al. v. Moore Mill & Gin Co., supra, was a case wherein the assured took an inventory on the same day that the policy was issued and on the same date opened a new set of books. The insurance company contended that on account of failure of the insured to keep the old books, showing transactions antedating the policy sued on, the policy was forfeited. The court, in passing on this contention, says:

"It is perfectly apparent that the insured did exactly what this iron-safe clause required him to do. This clause made it obligatory upon him to keep the last inventory of his business, and to keep a set of books showing a record of business transacted, including all purchases and sales, both for cash and credit, and to keep the inventory and books securely locked in a fireproof safe, and this condition the insured fully complied with. His duty was to keep a set of books showing a record of business thereafter transacted, including future purchases and sales. He did not consent to preserve indefinitely his old books, showing all the past transactions. So far as this contention may be concerned, it was immaterial whether he had any books of account antedating the policy."

The case of Carp v. National Ins. Co. (Mo. App.) 99 S. W. 523, is very much in point here on the state of facts; in that case the insured had taken an inventory in January, 1901; on October 17, 1901, his policy was issued; he took another inventory within the calendar year, January, 1902. Thereafter, and on the 29th day of January, 1902, the stock of merchandise insured was destroyed by fire. The book warranty clause set out in the opinion is identical with the one here under consideration, and the court, in passing upon the contention made, says:

"He was only required, under the second subdivision of the clause quoted, to keep books from * * * the last inventory The first subdivision of the clause provides that he shall make an inventory within thirty days after the date of the policy if one has not been taken within one year prior thereto; otherwise he shall make an annual inventory. Having made such inventory within one year prior to the date of the policy, he was only required next to make an annual inventory. As we have seen, he made his annual inventory, which was just completed at the time of the fire. Subdivision 2, by plain construction, only required him to keep books after the annual inventory, as that was the only inventory required under the policy at the time of the fire. It was, therefore, immaterial whether a book of purchases made prior to said last annual inventory was preserved or not. There was no necessity that a record should be kept of prior purchases and sale of goods after the date of the last inventory. This inventory would show the amount of goods on hand at the date of such inventory. Books of prior date would be wholly worthless as evidence after such inventory and subsequent purchases and sales."

We therefore hold that the assured, in producing the last inventory, together with a complete set of books kept from that date to the time of the fire and also the last preceding inventory, fully complied with the requirements of the book warranty clause.

The second assignment of error relied upon is the ruling of the court admitting the testimony of certain witnesses touching the matter of value and condition of the mercantile stock prior to the fire, and we think that the rulings of the trial court are subject to criticism; and while this court holds that the fitness of the witnesses to testify as to values is a question of fact, addressed to the sound discretion of the trial court, yet the court in this case did not confine the testimony to the limits that should have been observed, but we cannot say that there is shown any clear abuse of discretion. 8 Enc. of P. & P. 747; Yates v. Garrett, 19 Okla. 449, 92 Pac. 142; Wichita Falls & N. W. R. Co. v. McAlary, 44 Okla. 326, 144 Pac. 583; A., T. & S. F. R. Co. v. Baker, 37 Okla. 48, 130 Pac. 577; W. F. & N. W. R. Co. v. Harvey, 44 Okla. 321, 144 Pac. 581; Adams v. State, 5 Okla. Cr. 347, 114 Pac. 347; Continental Ins. Co. v. Horton, 28 Mich. 173; Rugenstein v. Ottenheimer, 70 Or. 600, 140 Pac. 747; Enos v. St. Paul F. & M. Ins. Co., 4 S. D. 639, 57 N. W. 919, 46 Am. St. Rep. 796; Graves v.

Merchants' & Bankers' Ins. Co. 82 Iowa, 637, 49 N. W. 65, 31 Am. St. Rep. 507.

The next assignment urged by the plaintiff in error is that the court erred in its instruction No. 3, followed by the assignment that the court erred·in failing to give defendant's requested instruction No. 5, which assignments may be considered together. Instruction No. 3 complained of has reference to the three-fourths value clause, and is an attempt by the court to tell the jury that if they find that from the time of the taking of the respective policies the total insurance at no time exceeded three-fourths of the cash value of the property, then there was a substantial compliance with the fourth paragraph of the defendant's answer. This instruction is subject to grave criticism, and should not have been given in the form it was given. The jury simply should have been told upon what conditions the policy would be avoided in case they found the value clause had been violated. The defendant's request No. 5 is incorrect, in part, in that it leaves out of consideration that part of the property not destroyed by the fire, and simply instructs the jury that in case they find that the insured at the time of the fire had insurance in excess of three-fourths of the cash value of the property destroyed, then the defendant breached his contract and forfeited his right to recovery under the policies. This would not be true, since no consideration is given to that part of the fixtures which it is shown by the evidence were not destroyed. Taken altogether, we think there is no such error in the instructions given and instruction refused as would warrant a reversal.

The last assignment urged is that the court refused to submit to the jury the question of incendiarism or arson by the insured. We doubt if the record is in condition to have warranted a submission of that issue, even if it had been pleaded, but no such issue was raised by the pleadings. It would have been error for the court to have instructed upon that issue. 19 Cyc. 928; 11 Enc. of P. & P. 422; Alamo, etc., Ins. Co. v. Heidemann Mfg. Co. (Tex. Civ. App.) 28 S. W. 910; Morley v. Liverpool, etc., Ins. Co., 92 Mich. 590, 52 N. W. 939; Heidenreich v. Aetna Ins. Co., 26 Or. 70, 37 Pac. 64; Flynn v. Merchants' Mutual Ins. Co., 17 La. Ann. 135.

Considered as a whole, we believe the case was fairly tried, the issues fairly submitted to the jury, and that there is no error which would warrant a reversal.

The judgment is affirmed.

By the Court: It is so ordered.

On Rehearing.

TURNER, J. In the petition for rehearing it is urged that, inasmuch as evidence reasonably tending to prove incendiarism went to the jury without objection, the court, in the absence of a motion to amend which was not filed, should have considered the answer amended so as to conform to the proof and have given the requested instruction upon that issue. Not so, for the reason that, as defendant was not entitled to so amend by actual leave of court, as such amendment would have changed his defense, contrary to statute (Rev. Laws 1910, sec. 4790), so it was not the duty of the trial court to consider the answer amended to conform to the proof, as the effect thereof would be to give indirectly to defendant the benefit of an amendment which he had no right directly to receive.

We are therefore of opinion that, incendiarism not being in issue, there was no error in the refusal of the court to charge upon·it as requested, and that the petition for rehearing should be overruled.

All the Justices, except KANE, J., absent, and not participating, concur.