**No. 59501.**—Gold Seal Importers, Inc. *v.* United States, protest 179781–K (New York).

FORD, Judge:   The merchandise the subject of the protest listed above was classified by the collector as "beaded articles on net," and duty was levied thereon at the rate of 90 percent ad valorem under paragraph 1529 (a) of the Tariff Act of 1930.   In its original protest, plaintiff claimed the merchandise to be properly dutiable at 45 or 50 percent ad valorem under paragraph 1529 (a) and T. D. 51802.   By amendments, the merchandise is claimed to be properly dutiable at 30 percent ad valorem under paragraph 1503 and T. D. 51898, or at the rate of 45 percent ad valorem under paragraph 1529 (a), by virtue of the proviso in paragraph 1503, as modified by T. D. 51909.

In its brief filed herein, plaintiff asserts that:

The plaintiff is prepared to abandon all other claims herein except the claim of 30 per centum ad valorem under paragraph 1503, *supra,* as modified by T. D. 51898 and the claim of 45 per centum ad valorem under paragraph 1503, *supra.*

By virtue of the above, we shall consider as abandoned the two claims made in the original protest under paragraph 1529 (a) and T. D. 51802.

The pertinent portions of the involved paragraphs are as follows:

PAR. 1529.   (a) * * * all fabrics and articles made on a lace or net machine, all the foregoing, plain or figured; * * * all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished (except materials and articles provided for in paragraph 915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e), or in Title II (free list), or in subparagraph (b) of this paragraph), by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, 90 per centum ad valorem.

[PAR. 1503, as modified by T. D. 51802 and T. D. 51898].   Fabrics and articles not ornamented with beads, spangles, or bugles, nor embroidered, tamboured, appliqued, or scalloped, composed wholly or in chief value of beads or spangles (other than imitation pearl beads, beads in imitation of precious or semiprecious stones, and beads in chief value of synthetic resin), 30 per centum ad val.

[PAR. 1503, as modified by T. D. 51802 and T. D. 51909].   *Provided further,* That no article composed wholly or in chief value of any of the foregoing beads or spangles shall be subject to duty at a less rate than 50% of the rate imposed in any paragraph of this Act upon such articles without such beads or spangles.

At the trial of this case, a sample representing the involved merchandise, except as to color and size, was admitted in evidence as exhibit 1, and counsel thereupon agreed that "Exhibit 1 is in chief value of beads and is not ornamented, and the beads are attached to a base of net."

It is clear from a reading of paragraph 1503, as modified by T. D. 51909, that it simply imposes a limitation upon the minimum rate to be assessed upon articles, composed wholly or in chief value of any of the foregoing beads or spangles. It contains no limitation upon the maximum rate to be imposed upon articles, composed wholly or in chief value of such beads or spangles.   To sustain the plaintiff's contention herein regarding the construction of said paragraph 1503, *supra,* would require a rewriting thereof substantially as follows:

*Provided further,* That no article composed wholly or in chief value of any of the foregoing beads or spangles shall be subject to duty at a *higher* rate than 50% of the rate imposed in any paragraph of this Act upon such articles without such beads or spangles.

The answer to the plaintiff's contention is that the trade negotiators did not see fit to so frame the modified paragraph, and we can find no justification for so construing the same. Our duty is fully performed when we construe the provision as written, and we have no authority to rewrite the paragraph by construction. Plaintiff's claim under this provision is, therefore, overruled.

Bennett Somberg testified for the plaintiff that he is vice president of Gold Seal Importers, Inc., the plaintiff herein; that his concern imports ladies' handbags and beaded mats and manufactures ladies' handbags in this country; that he has been associated with the plaintiff since 1945; that his duties touch all phases of the business of the firm, including importing, manufacturing, and selling; that his firm has been importing this type of merchandise for a number of years; that he is familiar with the involved merchandise into the completed handbag; that he has supervised the mounting of that type of beaded bag since about 1946.

The witness produced certain articles to show how merchandise like exhibit 1 is processed into a finished handbag. These were received in evidence and marked plaintiff's collective exhibits 2 and 3 and exhibit 4. In describing exhibit 1, the witness testified that it represented two sides of the handbag which are converted into one handbag by taking two beaded plaques, as shown by collective exhibit 2; that these two plaques are backed up by a wadding or other material and, after the material or net underneath the beads is tucked in on both plaques, the plaques are then joined together, as shown by collective exhibit 3; that the frame and lining are then dropped into collective exhibit 3, and this is sewn to the frame and the net material is tucked in, as shown in the finished product, represented by exhibit 4; that not any of the net base on exhibit 1 is visible or apparent in any place on exhibit 4, either inside or outside.

The witness further testified that it is easier for the handsewer to shirr that type of material; that the function of the net base on exhibit 1 is for utilitarian purposes only; that the sole purpose of using the net base on exhibit 1 is to make easier the utilitarian operation of the bag; that, when the merchandise arrives in this country, there is net between the plaques; that the net area of exhibit 1 is not used in the finished handbag, but is cut off and thrown away; and that the beads in exhibit 1 are crocheted on the net and that net covers the whole area of said exhibit, including those portions covered by the beads.

Counsel for the plaintiff contends in its brief filed herein that, for the involved merchandise to find classification under paragraph 1529 (a), the net portion thereof must be ornamental net, and cites as supporting such contention *Davies, Turner & Company* v. *United States*, 39 C. C. P. A. (Customs) 76, C. A. D. 466. In that case, the Court of Customs and Patent Appeals held that:

* * * Even though an article may be incidentally ornamental, if its primary purpose is utilitarian, it may not properly be considered as ornamental. *Paramount Bead Corp., Walter A. Yokel* v. *United States*, 19 C. C. P. A. (Customs) 385, T. D. 45522. There can be no question but that the primary purpose of the involved merchandise is utilitarian.

An examination of paragraph 1529 (a) carries conviction to our minds that all of the articles *eo nomine* set out are ornamental and for the embellishment of the person or the house.

In the *Paramount Bead Corp.* case, *supra*, the Court of Customs and Patent Appeals held as follows:

With respect to Exhibits 1 and 4, which are admittedly composed in chief value of beads, it was established by the testimony that the articles as a whole had a

utilitarian use as, and were used only as, pull chains for electric lamps, and further, that the beads on each of the articles represented by Exhibits 1 and 4 served a utilitarian purpose in that they are luminous in the dark, thereby enabling a person readily to grasp the pull chain.

\*     \*     \*     \*     \*     \*     \*

\* \* \* In other words, we hold that an article that has a primary utilitarian purpose, although it may be incidentally ornamental, can not be classified as an ornament under the provisions of paragraph 1430. To hold otherwise would bring a multitude of other articles having utilitarian uses within the provisions of this paragraph. While this court has never expressly declared that an article having a utilitarian use, which article is incidentally ornamental, may not be classified as an ornament under said paragraph 1430 and its predecessors, it has so held in effect in the case of *United States* v. *Lines & Warne,* 5 Ct. Cust. Appls. 552, T. D. 35193.

In the instant case, counsel have agreed that the involved merchandise is not ornamented. We are, therefore, not here concerned with the meaning of the term ornamented, as that term is used in said paragraph 1529 (a). However, counsel have further agreed that the involved merchandise is in chief value of beads and that the beads are attached to a base of net. The fact that practically all the net is cut off and thrown away after importation and prior to the completion of the handbag is of no moment here. When the involved merchandise arrived in this country, one side of each plaque was entirely covered with net. Unless specifically otherwise provided, imported merchandise must be classified in the condition in which imported. The involved merchandise was not classified as an ornament, or as articles in part of an ornament, or as being ornamental, nor does either party advance such a contention.

Paragraph 1529 (a) does not contain an *eo nomine* provision for nets, as such, but provides for "\* \* \* all fabrics and articles made on a lace or net machine, all the foregoing, plain or figured; \* \* \* by whatever name known, and to whatever use applied, \* \* \*." However, the decisions have been uniform and are of long standing, holding the provision "by whatever name known" to be equivalent to an *eo nomine* designation. It will be observed that said paragraph 1529 (a) provides for all fabrics and articles made on a net machine, plain or figured. So far as we are able to determine from a visual examination, the net portion of the involved articles was *plain* net. Certainly, there is nothing ornamental about it, and the uncontradicted evidence is that it served a utilitarian use.

In paragraph 1529 (a), the Congress very carefully indicated those parts of the tariff act it did not intend to invade by the all-inclusive language of said paragraph. In order that there might be no misunderstanding or misconstruction as to the articles and fabrics which it intended to except from the invading provisions of said paragraph 1529 (a), the Congress used the following plain and unambiguous language:

\* \* \* (except materials and articles provided for in paragraph 915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e), or in Title II (free list), or in subparagraph (b) of this paragraph) \* \* \*.

Congress did not except from the provisions of said paragraph 1529 (a) articles *eo nomine* set out therein, which had a utilitarian use, or articles, fabrics, or materials, *eo nomine* provided for therein, which were not ornamental and which were not for the embellishment of the person or house.

In the case of *Madame Adele* v. *United States,* 23 C. C. P. A. (Customs) 305, T. D. 48176, the Court of Customs and Patent Appeals made the following observations in regard to the all-embracive provisions of said paragraph 1529 (a):

We do not think Congress intended that corsets composed in part of lace or net should find classification under said subparagraph (c), but that it intended that

they should be classified at a higher rate of duty as articles in part of lace and net in subparagraph (a) of said paragraph 1529. In subparagraph (a), Congress very carefully indicated those parts of the tariff act it did not intend to invade by the very inclusive language in subparagraph (a). It excepted from its invading powers articles which were provided for in—

paragraph 915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e), or in Title II (free list), *or in subparagraph (b) of this paragraph.* (Italics ours.)

Not only did it make exception of the free list and other paragraphs, but it made an exception as to *subparagraph (b) of paragraph 1529*, which paragraph we now have under consideration. If Congress had intended to make exception of subparagraph (c) it seems clear to us that it would have enumerated it in the list of exceptions. See *Glemby's Sons Co. (Inc.)* v. *United States*, 15 Ct. Cust. Appls. 420, T. D. 42591. Obviously it did not want the 90 per centum ad valorem provision of paragraph 1529 (a) to invade completely the hose provisions of the act and so by special provision in paragraph 1529 (a), it gave to hose of certain kinds special treatment. In subparagraph (b) it made specific provision for certain kinds of handkerchiefs which would have otherwise found classification under said subparagraph (a). If Congress had intended that corsets of the kind at bar should not find classification under said subparagraph (a) it seems obvious, in view of the foregoing, that it would have inserted in subparagraph (c) or in subparagraph (a) appropriate language to have brought about such a result. Not only did it fail to employ any language justifying a conclusion that it so intended but it reenacted the old provision found in the predecessor paragraph 1430, Tariff Act of 1922, to wit:

by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments [etc.].

It is conceded in this case that the composition of the merchandise at bar responds to the last above-quoted phrase.

\*        \*        \*        \*        \*        \*        \*

In view of the uniformity of the holdings of this and other courts as to the scope and effect to be given to the terms "by whatever name known" and "whether or not named, described, or provided for elsewhere in this act", we think it unnecessary to discuss further here the settled proposition that the language under consideration, found in subparagraph (a) of paragraph 1529 brings within the purview of said subparagraph corsets which otherwise might find classification under subparagraph (c). To hold with appellant in her contention that since Congress made *eo nomine* provision for corsets in subparagraph (c), it necessarily follows that we are required to hold that all corsets should be there classified, would be to hold contrary to what we regard as settled law.

That Congress by the reenactment in paragraph 1529 (a) of all the language here under consideration, in respects pertinent to the issue, which was found in the predecessor paragraph 1430, Tariff Act of 1922, gave legislative approval to this court's uniform holdings on the subject cannot be seriously questioned.

In *Kayser & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 474, T. D. 41367, the Court of Customs Appeals, in holding that paragraph 1430 of the Tariff Act of 1922, which contained the term, "by whatever name known and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act," invaded every paragraph (except those therein excepted) of the Tariff Act of 1922, employed the following language:

The embroidery provision of paragraph 1430 is so sweeping, clear, and definite as to the goods subjected to its operation that there is no room for interpretation and no doubt left as to the goods which Congress meant to include. That provision subjects to its operation not only fabrics and articles embroidered in any manner, as did the tariff acts of 1897, 1909, and 1913, but prescribes that the duty therein specified shall be imposed on all embroidered fabrics and articles, finished or unfinished, *by whatever name known and to whatever use applied, and whether or not named, described, or provided for elsewhere in this act.* Every paragraph of the Tariff Act of 1922 must yield to that language, and that means that a duty of 75 per centum ad valorem must be levied on every embroidered commodity composed of yarns, threads, filaments, \* \* \*. [Italics quoted.]

It having been admitted that the involved merchandise was in part of net, following the principles announced in the *Madame Adele* and *Kayser & Co.* cases, *supra*, we hold the involved merchandise to be properly dutiable at the rate of 90 percent ad valorem under paragraph 1529 (a) of the Tariff Act of 1930, as classified by the collector. All claims of the plaintiff are, therefore, overruled. Judgment will be rendered accordingly.