(C. D. 1888)

GOLD SEAL IMPORTERS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 11, 1957)

*Brooks & Brooks* (*J. Joseph McDermott* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Joseph E. Weil* and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: By this suit, plaintiff challenges the action of the collector of customs in classifying certain imported merchandise as "beaded articles on net" and levying duty thereon at the rate of 90 per centum ad valorem under paragraph 1529 of the Tariff Act of 1930. Plaintiff claims said merchandise to be properly dutiable at 30 per centum ad valorem under paragraph 1503 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, made effective by T. D. 51898, as fabrics or articles not ornamented with beads, composed wholly or in chief value of beads, or at the rate of 45 or 50 per centum ad valorem -

under paragraph 1529 (a) of said act, as modified by the Torquay Protocol to said General Agreement, 86 Treas. Dec. 121, T. D. 52739, by virtue of the proviso to said paragraph 1503, made effective by T. D 51909.

The paragraph under which classification was made, and the paragraphs under which claims are made, are, as far as here material, as follows:

PAR. 1529 (a)  * * * all fabrics and articles made on a lace or net machine, all the foregoing, plain or figured; * * * all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished, * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile, 90 per centum ad valorem.

PAR. 1503 [as modified by T. D. 51802 (82 Treas. Dec. 305)]. *Provided*, That for the purpose only of applying the second proviso to paragraph 1503, Tariff Act of 1930, to articles provided for in this item, each rate of duty applicable on January 1, 1945, shall be reduced by 50 per centum of such rate.

PAR. 1503 [as modified by T. D. 51909 (83 Treas. Dec. 170)]. *Provided*, That for the purpose only of applying the second proviso to paragraph 1503, Tariff Act of 1930, to articles provided for in this item, each rate of duty "existing" (within the meaning of section 350, Tariff Act of 1930, as amended by the Act of July 5, 1945) on January 1, 1945, shall be reduced by 50 per centum of such rate.

When this case was called for hearing, counsel for the plaintiff stated:

I wish to stipulate, if it pleases the Court and meets with the approval of Government counsel, that this merchandise is similar in all material respects to the merchandise in Protest 179781–K and I'd like to move that the exhibits and record in the said protest 179781–K be incorporated and made a part of the record in the case at bar.

MR. WEIL: The Government so stipulates.

Protest 179781–K was decided on December 1, 1955, and is reported in *Gold Seal Importers, Inc.* v. *United States*, 35 Cust. Ct. 322, Abstract 59501. As shown by said decision, at the trial of that case, a sample representing the merchandise there involved, except as to color and size, was admitted in evidence as exhibit 1, and counsel thereupon agreed that "Exhibit 1 is in chief value of beads and is not ornamented, and the beads are attached to a base of net."

Bennett Somberg testified for the plaintiff in the previous case that he was vice president of Gold Seal Importers, Inc.; that his concern imports ladies' handbags and beaded mats and manufactures ladies' handbags in this country; that he has been associated with the plaintiff since 1945; that his duties touch all phases of the business of the firm, including importing, manufacturing, and selling; that his firm has been importing this type of merchandise for a number of years; that

he is familiar with the manufacture of the involved merchandise into completed handbags; that he has supervised the manufacture of that type of beaded bag since about 1946.

The witness also produced certain articles to show how merchandise like exhibit 1 is processed into a finished bag. These were received in evidence and marked plaintiff's collective exhibits 2, 3, and exhibit 4. In describing exhibit 1, the witness testified that it represented two sides of the handbag which are converted into one handbag by taking two beaded plaques, as shown by collective exhibit 2; that these two plaques are backed up by a wadding or other material and, after the material or net underneath the beads is tucked in on both plaques, the plaques are then joined together, as shown by collective exhibit 3, and this is sewn to the frame and the net material is tucked in, as shown in the finished product, represented by exhibit 4; that not any of the net base on exhibit 1 is visible or apparent in any place on exhibit 4, either inside or outside.

The witness further testified that it is easier for the handsewer to shirr that type of material; that the function of the net base on exhibit 1 is for utilitarian purposes only; that the sole purpose of using the net base on exhibit 1 is to make easier the utilitarian operation of the bag; that, when the merchandise arrives in this country, there is net between the plaques; that the total net area of exhibit 1 is not used in the finished handbag, but the surplus is cut off and thrown away; and that the beads in exhibit 1 are crocheted on the net and that net covers the whole area of said exhibit, including those portions covered by the beads.

Counsel for the plaintiff, in his brief filed herein, makes the following statement:

In the case of *United States* v. *George S. Bush & Co. Inc.*, 310 U. S. 371, the Supreme Court laid down the rule that *the judgment* of the President on the facts, adduced in pursuance of the procedure prescribed by Congress, that a change of rate is necessary is no more subject to judicial review under this statutory scheme than if Congress itself had exercised that judgment.

Counsel then quotes at length from the above decision. This court is not in disagreement with the decision in the *Bush* case, *supra*, but, as we understand the record in this case, *the judgment* of the President on the facts in changing the rates of duty is not an issue in this case, nor is it contended by anyone that such an act on the part of the President is subject to judicial review.

It should be remembered that counsel have agreed that the subject merchandise is in chief value of beads and that the beads are crocheted to a base of net. The fact that all the surplus net is cut off and thrown away after importation and prior to the completion of the handbag is of no moment here. When the subject merchandise arrived in this

country, one side of each plaque was entirely covered with net, and there was also a sizable amount of surplus net. Unless specifically otherwise provided, imported merchandise must be classified in the condition in which imported. In its imported condition, the invoiced merchandise was in part of net, and we have found no indication that either the Congress or the trade negotiators intended that it should be classified in other than its imported condition.

Paragraph 1529 does not contain an *eo nomine* provision for nets, as such, but provided for "* * * all fabrics and articles made on a lace or net machine, all the foregoing, plain or figured; * * * by whatever name known, and to whatever use applied, * * *." However, the decisions have been uniform and are of long standing, holding the provision "by whatever name known" to be equivalent to an *eo nomine* designation. It will be observed that said paragraph 1529 provides for all fabrics and articles made on a net machine, plain or figured. So far as we are able to determine from a visual examination, the net portion of the subject merchandise was plain net. Certainly, there is nothing ornamental about it, and the uncontradicted evidence is that it serves a utilitarian use.

In paragraph 1529, the Congress very carefully indicated those parts of the tariff act which it did not intend to invade by the all-inclusive language of said paragraph. In order that there might not be a misunderstanding as to the articles and fabrics it intended to except from the invading provisions of said paragraph 1529, the Congress used the following plain and unambiguous language:

* * * (except materials and articles provided for in paragraph 915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e), or in Title II (free list), or in subparagraph (b) of this paragraph) * * *.

It will be observed that the Congress did not except from the operation of said paragraph 1529 articles *eo nomine* set out therein, which had a utilitarian use.

In *Madame Adele* v. *United States*, 23 C. C. P. A. (Customs) 305, T. D. 48176, the Court of Customs and Patent Appeals made the following observations regarding the all-inclusive provisions of said paragraph 1529:

We do not think Congress intended that corsets composed in part of lace or net should find classification under said subparagraph (c), but that it intended that they should be classified at a higher rate of duty as articles in part of lace and net in subparagraph (a) of said paragraph 1529. In subparagraph (a), Congress very carefully indicated those parts of the tariff act it did not intend to invade by the very inclusive language in subparagraph (a). It excepted from its invading powers articles which were provided for in—

paragraph *915, 920, 1006, 1111, 1504, 1505, 1513, 1518, 1523, or 1530 (e)*, or in Title II (free list), *or in subparagraph (b) of this paragraph.* (Italics ours.)

Not only did it make exception of the free list and other paragraphs, but it made an exception as to *subparagraph (b) of paragraph 1529*, which paragraph we now

have under consideration. If Congress had intended to make exception of subparagraph (c) it seems clear to us that it would have enumerated it in the list of exceptions. See *Glemby's Sons Co. (Inc.)* v. *United States,* 15 Ct. Cust. Appls. 420, T. D. 42591. Obviously it did not want the 90 per centum ad valorem provision of paragraph 1529 (a) to invade completely the hose provisions of the act and so by special provision in paragraph 1529 (a), it gave to hose of certain kinds special treatment. In subparagraph (b) it made specific provision for certain kinds of handkerchiefs which would have otherwise found classification under said subparagraph (a). If Congress had intended that corsets of the kind at bar should not find classification under said subparagraph (a) it seems obvious, in view of the foregoing, that it would have inserted in subparagraph (c) or in subparagraph (a) appropriate language to have brought about such a result. Not only did it fail to employ any language justifying a conclusion that it so intended but it reenacted the old provision found in the predecessor paragraph 1430, Tariff Act of 1922, to wit:

> by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments [etc.].

It is conceded in this case that the composition of the merchandise at bar responds to the last above-quoted phrase.

\*          \*          \*          \*          \*          \*          \*

In view of the uniformity of the holdings of this and other courts as to the scope and effect to be given to the terms "by whatever name known" and "whether or not named, described, or provided for elsewhere in this act," we think it unnecessary to discuss further here the settled proposition that the language under consideration, found in subparagraph (a) of paragraph 1529 brings within the purview of said subparagraph corsets which otherwise might find classification under subparagraph (c). To hold with appellant in her contention that since Congress made *eo nomine* provision for corsets in subparagraph (c), it necessarily follows that we are required to hold that all corsets should be there classified, would be to hold contrary to what we regard as settled law.

That Congress by the reenactment in paragraph 1529 (a) of all the language here under consideration, in respects pertinent to the issue, which was found in the predecessor paragraph 1430, Tariff Act of 1922, gave legislative approval to this court's uniform holdings on the subject cannot be seriously questioned.

In his brief filed herein, after quoting from the Presidential proclamation reported in T. D. 51909, counsel for the plaintiff makes the following statement:

> We respectfully submit that the meaning of the language in the Presidential Proclamation, *supra,* is very clear and specific and is wholly free from ambiguity. It is clear to us that this language has but one meaning and that is for the purpose only of applying the second proviso to paragraph 1503, *supra,* to the articles provided for therein, that each rate of duty *existing* on such articles on January 1, 1945 *shall be reduced by 50 per centum of of such rate.*

In view of the above contention, it is apparent that counsel for the plaintiff is laboring under the impression that the subject merchandise consists of articles in chief value of beads and is not ornamented. Were this the case, the above contention would be sound and the plaintiff would be entitled to a judgment in its favor. However, in

addition to the above, it was also agreed between the parties that the beads, forming a portion of the subject merchandise, are attached to a base of net. It is apparent from the collector's classification that it was the net portion of the involved merchandise which caused him to classify the merchandise under said paragraph 1529, and this record makes it clear that the merchandise would be properly classified under paragraph 1503, were it not for the fact that it is composed in part of net. Of course, if the merchandise were provided for in said paragraph 1503, the proviso contained in T. D. 51909 would apply, and the modification of said paragraph 1503 would reduce the rate of duty upon it by 50 per centum of the rate of duty existing on January 1, 1945.

However, since the subject merchandise is not handbags or articles in chief value of beads, not ornamented, but is handbags or articles in chief value of beads, not ornamented, in part of net, it is not provided for by any language in said paragraph 1503 or any modification thereof, and the Presidential proclamation reported in T. D. 51909, reducing the rate of duty on "articles provided for in this item" by 50 per centum of the rate of duty "existing" on January 1, 1945, has no application to the subject merchandise.

That the subject merchandise, being in part of net, is more than articles in chief value of beads, not ornamented, is made clear from the following from *United States* v. *Sutherland International Despatch,* 21 C. C. P. A. (Customs) 264, T. D. 46790:

It appears from Exhibit 1 that the article here in question is composed of a brass channel and felt, the felt lining the inner surfaces of the channel. It was admitted upon the trial in the Customs Court that it is composed in chief value of brass.

\*    \*    \*    \*    \*    \*    \*

In the case at bar, we may paraphrase the language quoted from the case last cited by saying that it may be said that although the major part of the article here involved, in its first estate, was a brass channel, it nevertheless became something more than that when it was subsequently lined with felt. We here have the additional element, that it was dedicated to a particular use.

\*    \*    \*    \*    \*    \*    \*

So in the case at bar, Exhibit 1 shows the articles to be something more than brass channels. The brass channel forming a part of said article has been subjected to a manufacturing process. The testimony shows that the articles have been dedicated to a single use, and have no other use than in rectangular windows of marine craft, a use disclosed by the record to be different from the use to which brass channels without a further manufacturing process are put.

Aside from all other considerations, the fact remains that the subject merchandise is in part of net and that fact alone is sufficient to require its classification under said paragraph 1529.

All claims in this suit are, therefore, overruled. Judgment will be rendered accordingly.