**VERONA DYESTUFFS**

v.

**UNITED STATES.**

C.D. 3368; Protest Nos. 64/6044–19405–63.

United States Customs Court,
First Division.

March 25, 1968.

---

Sharretts, Paley, Carter & Blauvelt, New York City (Howard C. Carter, New York City, of counsel) for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Arthur H. Steinberg and Arthur E. Schwimmer, New York City, trial attorneys), for defendant.

Before WATSON and MALETZ, Judges.

WATSON, Judge:

The merchandise in the case at bar consists of a product described as "2-methyl-indole." It was assessed with duty under paragraph 27(a) (3), (5) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, supplemented by T.D. 52820, at the rate of 3½ cents per pound, plus 25 per centum ad valorem, under the provisions therein for "All products (* * *) by whatever name known, which are similar to any of the products provided for in paragraph 27 or 1651, Tariff Act of 1930, and which are obtained, derived, or manufactured in whole or in part from any of the products provided for in either of said paragraphs."

Plaintiff claims the involved merchandise properly free of duty under paragraph 1651 of the tariff act which provides as follows:

Paragraph 1651, Tariff Act of 1930:

Coal-tar products: * * *, and all other materials or products that are found naturally in coal tar, whether produced or obtained from coal tar or other source, and not specially provided for in paragraph 27 or 28 of Title I of this Act.

The record herein consists of the testimony of three witnesses for the defendant, and four exhibits, one for the plaintiff and three offered on behalf of the defendant. A report of the United States Customs Laboratory was received in evidence as plaintiff's exhibit 1. The parties stipulated that the facts therein stated are true. (R. 4.) Said report reads as follows:

The sample is 2-methyl-indole, a product which is synthesized commercially from a product provided for in paragraph 27. It is also found naturally in coal-tar.

It is similar to, and the same in strength as 2-methyl-indole made by Aldrich Chemical Co., Inc.

Defendant's exhibit A is a list of chemical compounds found in coal tar. (R.11–12.) 2-methyl-indole is on that list (fourth page of the exhibit, first column). A pictorial representation of the constituents of coal tar was received in evidence as defendant's exhibit A. (R. 15–17.) A commercially purified sample of 2-methyl-indole produced by DuPont was received in evidence as defendant's exhibit C. (R. 33–37.)

Defendant's first witness was Dr. Francis E. Cislak, director of research, development, and engineering for Reilly Tar & Chemical Corporation, Indianapolis, Indiana, whose business is processing coal tar and treating wood. (R. 5–6.) Dr. Cislak holds a Ph.D. in organic chemistry; has published research papers on coal tar products, including one on pyridine chemistry; and wrote the chapter on coal tar in the Encyclopedia Britannica. (R. 8.) It further appears that the witness is a member of several professional associations and holds more than 100 patents in the coal tar field. He stated that "coal tar is the condensation product obtained by heating coal in the absence of air. It is a by-product of the production of coke by the steel mills." (R. 5.) He testified that more than 300 chemical compounds have been found or identified in coal tar as listed in defendant's exhibit A, including 2-methyl-indole. (R. 10–12.)

Dr. Cislak further testified that the 2-methyl-indole content of coal tar is not a factor in the purchase of coal tar by his company, because "you couldn't get it out if you wanted it, economically"; and that, to his knowledge, the 2-methyl-indole has no use, either commercially or noncommercially, (R. 14.) and that it is not commercially recoverable from coal tar. (R. 15.) On cross-examination, Dr. Cislak testified that benzene is an important product obtained in the carbonization of coal tar. The steel companies, which supply his company with coal tar, extract and keep the benzene, which is condensed in the gases separately. The witness agreed that coal tar contains only one-tenth of one percent of benzene. (R. 18.) He stated that his company never produced benzene commercially because it is not present in the coal tar received by his company from the steel mills. (R. 19.) The record herein discloses the following:

JUDGE WATSON: Let me ask one question, if I may. To your knowledge, Doctor, have there been any improvements in the processing of coal tar in order to extract these by-products which you have mentioned, or have diagrammed on Defendant's Exhibit B?

THE WITNESS: Yes, there have. There have been several improvements. Originally you made practically all of your extractions by distillation. Now we have a new technique called solvent extraction, where you can, if you mix oil with water, they spray it into layers. If you have some constituent in that oil that is lighter in volume than water, you can get it out of the oil. We use water for some of these, but there are ways of now taking this apart without all of that distillation, but by extraction methods. * * *

* * * * * *

JUDGE WATSON: Relating this to 2-methyl-indole, have there been any improvements, to your knowledge, of extracting this by-product out of coal tar to a greater degree than you have indicated here of three-hundreths to five-hundreths of 1 per cent?

THE WITNESS: No, I have no knowledge on that at all.

* * * * * *

BY MR. STEINBERG:

Q. You say you have no knowledge. What did you mean? You know of no improved method?—A. I know of no improved methods that have been used to get the 2-methyl-indole out. [R. 20–22.]

Defendant's second witness was Dr. Arnold F. Plue, a doctor of philosophy, major in organic chemistry, who is a technical associate in the research and

development department of the General Aniline & Film Corporation for 17 years. His company manufactures dyestuffs and photographic chemicals. (R. 22–23.) The witness testified that he had developed the process by which his company synthesizes it from aniline, commonly known as aniline oil, a basic intermediate. He stated that, in developing the process, he gave consideration to extracting 2-methyl-indole from coal tar but "considered it to be too impractical and uneconomical." (R. 25–27.) "Based on the very minute quantity present, the cost would be prohibitive." (R. 29.) On cross-examination, Dr. Plue stated that 2-methyl-indole is sometimes referred to as alpha-methyl-indole or methyl-ketol. (R. 28.) The witness further testified on cross-examination that his company would not have any use for most of the other products of coal tar inasmuch as his company is "not set up for coal tar distillation." (R. 29.)

Defendant's third witness was Dr. Joseph E. Laucius, a doctor of philosophy in organic chemistry, who is "division head in the technical end of the manufacturing" of DuPont Co. at Deepwater, New Jersey. (R. 29–30.) He stated that he was familiar with 2-methyl-indole since prior to 1950 as an intermediate chemical or compound for making dyes. (R. 31–32.) As did the prior witness, he testified that his company produces 2-methyl-indole synthetically from aniline oil. (R. 33.) Dr. Laucius also testified that it is impractical to extract 2-methyl-indole from coal tar "for our use" because:

The percentage being so small, it would involve a tremendous amount of work to get a little bit out [R. 34.]

On cross-examination, Dr. Laucius admitted that DuPont Co. does not distill coal tar. (R. 34–35.) On redirect examination, the witness stated that he did not have "any idea" whether 2-methyl-indole has ever been extracted from coal tar. (R. 36–37.)

In the case at bar, the evidence is undisputed that 2-methyl-indole is found naturally in coal tar. Plaintiff's exhibit 1, supra, report of the United States Customs Laboratory, so indicates. As heretofore noted, it is conceded that the facts contained in said exhibit are true. The witnesses for the defendant also testified that the imported product is found naturally in coal tar. Further, the natural existence of 2-methyl-indole in coal tar is confirmed by recognized authorities in the field. In the volume entitled "The Chemistry of Synthetic Dyes" by K. Venkataraman, Director, Department of Chemical Technology, University of Bombay, volume 1, at page 25, it is stated:

Among the coal tar products which have become available in recent years may be mentioned methyl and dimethylnapthalenes, * * *, 2-meshylindole, * * *.

See, also "Chemistry of Coal Utilization" by H. H. Lowry, volume II, page 1367.

It is the position of the defendant in the case at bar, that the provision in paragraph 1651 for "all other materials or products that are found naturally in coal tar, whether produced or obtained from coal tar or other source" applies only to those substances which are found naturally in coal tar in commercially useful quantities; that the 2-methyl-indole found in coal tar is not subject to commercial utilization, and that, therefore, the imported product is not provided for in said paragraph 1651. The testimony of the witness for the defendant in this regard, is that 2-methyl-indole found naturally in coal tar is still unknown to commerce. Defendant's witness, Dr. Cislak, who stated that he has been familiar with 2-methyl-indole since the early 1930's (R. 13), testified to the effect that it is found naturally in coal tar to the extent of about three- to five-hundredths of one percent and that the 2-methyl-indole found in coal tar has no use commercially or noncommercially. (R. 14.) He explained that, while 2-methyl-indole was first extracted from coal tar in 1925, this was just a matter of research to prove its presence in coal

tar and that the extraction process was never used. (R. 38.) The witness further testified that he knows of no improved method of extracting 2-methyl-indole from coal tar. (R. 22.)

Plaintiff in its brief, page 11, points out that up to five one-hundredths of one percent of "pyridine" is present in the "typical coal tar of commerce." (The Chemistry of Coal Tar Utilization, edited by H. H. Lowry.) The plaintiff then directs our attention to the fact that, while pyridine appears in coal tar to the same extent as 2-methyl-indole, yet pyridine is specifically named by Congress in paragraph 1651. From this fact, plaintiff maintains that there is a legislative intent to include in the provision for "all other materials or products found naturally in coal tar" all products so found in whatever quantity.

In support of the above contention, plaintiff in its brief directs our attention to the holding of the court in Aldrich Chemical Company, Inc. v. United States, 45 Cust.Ct. 305, Abstract 64658. There, the involved merchandise consisted of a product known as "2-methylresorcinol" which was classified under paragraph 27 of the Tariff Act of 1930, as modified, at the rate of 25 per centum ad valorem and 3½ cents per pound as a coal-tar product. Plaintiff therein claimed, as in the case at bar, that the merchandise was properly free of duty under paragraph 1651 of said act for coal-tar products, found naturally in coal tar, whether produced or obtained from coal tar or other source, and not specially provided for in paragraph 27 or 28 of the act. Plaintiff's witness testified that the product there in question occurred naturally in coal tar and, further, that the 2 methylresorcinol "occurs both in the aqueous liquor which is distilled from the coal and in the coal tar." The record further disclosed that the involved product was not made from resorcinol which is one of the products enumerated in paragraph 27 of the tariff act. In the case at bar, however, the record establishes that the 2-methyl-indole is derived for commercial use from aniline oil. (R.

24–25, 27, 33 and plaintiff's exhibit 1), a product which is specifically named in paragraph 27(a) (1). In the absence of any evidence to the contrary, it must be presumed that the merchandise at bar was so derived. This latter factor, i. e. the derivation of the imported product from one of the products provided for in paragraph 27(a) (1), distinguishes, in our opinion, the situation in the *Aldrich* case, supra, from that which obtains in the case at bar, and persuades us that, on the basis of the record here presented, the imported product is properly classifiable under the provisions of paragraph 27(a) (3), (5) of the tariff act, as classified.

In the "Summary of Tariff Information, 1929, on the Tariff Act of 1922," page 131, the following is stated:

> Paragraph 27 includes a class of coal-tar chemicals commonly known as "intermediates," which bear a close relation to the finished coal-tar products in paragraph 28. They do not occur as such in coal-tar, but are prepared from the "crudes" by chemical treatment, such as that with sulphuric acid, nitric acid, alkalis, or chlorine, and other chemicals. The "crudes" are compounds, such as benzene, toluene, naphthalene, separated by simple methods from coal tar, and are exempt from duty under paragraph [1549].

> Intermediates are the raw materials which, by complex chemical processes are converted into dyes, drugs, * * * and tanning materials. The intermediates are closely related to the dyes and other finished coal-tar products. * * *

In the above connection, defendant's witness Plue, who developed the process by which his company synthesizes 2-methyl-indole from aniline, a basic intermediate, testified that his company uses the synthetically obtained 2-methyl-indole as a dyestuff intermediate (R. 24–25), as many of the products provided for in paragraph 27 are used. Defendant's witness Dr. Laucius, who stated that he has worked with 2-methyl-indole for some

9 years, testified that the production of dyes is the only use he knew of for the imported product. It, accordingly, appears that 2-methyl-indole is similar in use to one or more of the products provided for in paragraph 27 and thus is included within the class of coal-tar intermediates which are provided for in paragraph 27 of the tariff act. (Summary of Tariff Information, 1929, supra.) Further, plaintiff, on its part, has not introduced any evidence to overcome the presumption of similarity of the product at bar to those provided for under paragraph 27 of the tariff act.

As indicated above, the imported product, in our opinion, falls within the description in paragraph 27 (a) (3), (5) of the Tariff Act of 1930, as modified, for "All products (* * *), by whatever name known, which are similar to any of the products provided for in paragraph 27 or 1651, Tariff Act of 1930, and which are obtained, derived, or manufactured in whole or in part from any of the products provided for in either of said paragraphs." Further, in determining whether the imported merchandise is properly classifiable under the provisions of paragraph 27(a) (3), (5), supra, the provision which appears therein for products "by whatever name known" is especially pertinent. It has been well settled that such a provision is equivalent to an *eo nomine* designation. Gold Seal Importers, Inc. v. United States, 35 Cust.Ct. 322, 324, Abstract 59501.

In Levi, Sondheimer & Co. v. United States, 7 Ct.Cust.Appls. 447, T.D. 37012, the court, page 449, stated:

* * * In applying the *eo nomine* rule the question always is which of the competing paragraphs more closely and accurately describes the merchandise. The *existence* of this rule, of course, implies that there is sometimes reasonable ground to claim that merchandise is embraced in the language of more than one paragraph and its *effect* is to classify such merchandise under the one which more precisely

describes it. The question considered is not whether one overlaps the other, or whether one is a genus and the other a species, although incidentally either of these questions may arise, but the controlling factor is always whether the language of the one more accurately describes the merchandise than that of the other and when so found unless something appears to indicate that it was the intent of Congress that the merchandise should be classified without regard to the *eo nomine* rule, it is applied. * * *

Thus, paragraph 27(a) (3), (5) embraces all products falling within the description in said paragraph. On the other hand, the catchall provision in paragraph 1651 "whether produced or obtained from coal tar or other source" cannot, in our opinion, be construed as an *eo nomine* provision. It, accordingly, appears proper to invoke the *eo nomine* rule in this case, especially since the paragraph under which the merchandise was classified, namely paragraph 27(a) (3), (5), provides in effect for all products which are not specially provided for in paragraph 1651 and the portion of the paragraph under which the plaintiff relies, that is, paragraph 1651, provides in substance for "all *other* materials or products" which are "not specially provided for in paragraph 27" [italics ours], the provisions in paragraph 1651 being less specific in the present application, in our opinion, than those contained in paragraph 27(a) (3), (5).

In Plant Products Corporation v. United States, 44 CCPA 183, C.A.D. 658, our appellate court affirmed a decision in this court sustaining the collector's classification of an insecticidal compound known as Parathion under paragraph 27 (a) (3) of the Tariff Act of 1930 as a coal-tar product. In so doing, the appellate court, page 188, stated:

Parathion resembles the products provided for *eo nomine* in paragraph 27 in that it is derived from one of them (nitrophenol), and that such derivation is essential to the insec-

ticidal properties which gave it its principal, if not its only utility. * *

 So, too, in the case at bar, we are of the opinion that the derivation of the imported 2-methyl-indole which the record shows is derived from one of the products provided for *eo nomine* in paragraph 27, is essential to the properties "which gave it its principal, if not its only utility", namely, as a dyestuff intermediate. Accordingly, there is sufficient similarity between the imported product and those provided for *eo nomine* in paragraph 27(a) (3), (5) of the tariff act here under consideration.

For the reasons stated, the protest in this case is overruled.

Judgment will issue accordingly.

MALETZ, J., concurs.