(C.D. 4113)

VERONA-PHARMA CHEMICAL CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 30, 1970)

*Sharretts, Paley, Carter & Blauvelt* (*Eugene F. Blauvelt* and *Louis Schneider* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Brian S. Goldstein* and *Robert Blanc*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: This protest places in issue the classification of an importation known as 2-methyl-indole. The importation was classified pursuant to paragraph 27(a)(3)(5) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, supplemented by T.D. 52820, providing for "all products * * * by whatever name known, which are similar to any of the products provided for in paragraph 27 or 1651, Tariff Act of 1930, and which are obtained, derived or manufactured in whole or in part from any of the products provided for in either of said paragraphs."

Plaintiff claims that the importation should be free of duty pursuant to the provisions of paragraph 1651 of said tariff act as a material

or product "found naturally in coal tar, whether produced or obtained from coal tar or other source, and not specially provided for in paragraph 27 or 28 of Title I of this Act."

This case is a retrial of the issues in *Verona Dyestuffs* v. *United States*, 60 Cust. Ct. 286, C.D. 3368, 282 F. Supp. 493 (1968) (appeal dismissed July 29, 1968). The record in that case has been incorporated herein.

The facts in this case derived from the incorporated record and the record herein are as follows. Two-methyl-indole occurs naturally in coal tar but it is presumed that in the case of the importation it has been synthesized from aniline oil. Said aniline oil is specially provided for in paragraph 27 (a) (1) of the Tariff Act of 1930.

In addition, the importation is used in the production of dyes, a use similar to that of one or more products provided for in said paragraph 27. Testimony herein indicates that 2-methyl-indole is extracted from coal tar in commercially useful quantities.

In the incorporated case the court overruled plaintiff's protest and held that the importation had been properly classified. The court based its decision primarily on the finding that the importation was derived from a product named in paragraph 27 (a) (3) (5) and was similar in use to products provided for in paragraph 27. It thus fell squarely within the description of paragraph 27 (a) (3) (5) for "all products * * *, by whatever name known, which are similar to any of the products provided for in paragraph 27 or 1651, Tariff Act of 1930, and which are obtained, derived, or manufactured in whole or in part from any of the products provided for in either of said paragraphs."

The court found that the paragraph under which the importation had been classified was more specific than paragraph 1651 under which plaintiff claims. The court intimated that its preference was based on its view of paragraph 27 as equivalent to an *eo nomine* provision.

We are of the opinion that the facts adduced herein and the legal arguments made by plaintiff do not warrant a conclusion different from that in the incorporated case. We are inclined, however, to narrow somewhat the grounds of the decision and to restate our reasoning herein.

Plaintiff has made the argument that the prior decision creates an imbalance between the statutory provisions primarily by narrowing the scope of paragraph 1651 at the expense of the overall statutory scheme. Plaintiff asserts that paragraph 1651 is equivalent to an *eo nomine* enumeration of the importation and reflects an intent to include therein all compounds identified as natural components of coal tar.

Our view of the statutory scheme does not coincide with that of

plaintiff. We feel that in this respect it is more accurate to refrain from characterizing either of these competing provisions as *eo nomine* and instead to work with the existing tariff language to achieve a balance.

We consider it sufficient to narrow the grounds of this decision to the following: First, paragraph 1651 does not provide *eo nomine* for the importation. Its references to a general group of materials or products are founded in their existence in a natural state in coal tar and are fundamentally qualified by the proviso that they not be specially provided for in paragraph 27 or 28. Paragraph 27(a)(3)(5) provides more specifically for the importation by both *similarity* and *derivation* within the scope of the language "all products by whatever name known" and the requirements that they be similar to any of the products provided for in paragraph 27 or 1651 and that they be derived from any of the products provided for in said paragraphs.

We are of the opinion that the exclusionary language of paragraph 1651 comes into effect in this instance because of the importation's derivation from a product specifically named in paragraph 27(a)(1) and similarity to products named in paragraph 27. This is close to the situation in *Plant Products Corporation* v. *United States*, 44 CCPA 183, C.A.D. 658 (1957), in which an ester known as Parathion which came within the broad language of "esters of all kinds" in paragraph 37 of the Tariff Act of 1930 providing for "esters of all kinds, not specially provided for" was nevertheless held classifiable pursuant to paragraph 27(a)(3) by virtue of its similarity to, and derivation from, products provided for *eo nomine* in paragraph 27.

The statutory scheme which we view as existing herein will still permit paragraph 1651 to govern in cases of those importations which are compounds found naturally in coal tar and which are not provided for in paragraph 27 or 28 either *eo nomine* or by a description which relies on their similarity to other products and derivation therefrom. These compounds will fall within paragraph 1651 whether or not they are actually obtained from coal tar.

In light of this statutory scheme, we would not consider it anomalous if 2-methyl-indole derived from coal tar was classified pursuant to paragraph 1651 and 2-methyl-indole produced synthetically was classified as it was herein. See, *Aldrich Chemical Company, Inc.* v. *United States*, 45 Cust. Ct. 305, Abstract 64658 (1960). In this instance the derivation of the importation is the controlling consideration and the key to the statutory scheme.

In view of our conclusions herein, we do not reach the question of whether paragraph 1651 includes substances which are not produced in useful commercial quantities.

Judgment will issue accordingly.